## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Jon Germain, Elizabeth Gerlach, Amber Rhy, Angela Middleton, Bruce Middleton, Jennifer Prissel and Todd Prissel, on behalf of themselves and all others similarly situated,<br><br>                           Plaintiffs,<br>v.<br><br>Bank of America, N.A.,<br><br>                           Defendant. | Civil File No. <u>13-cv-00676</u><br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

Plaintiffs have requested that this Court enter an order determining that this action may proceed as a class action against Defendant. This memorandum is submitted in support of that motion.

## I.    NATURE OF THE CASE

The Seventh Circuit has held that cases such as the one before this Court should be resolved on a class-wide basis. It specifically found that,

> to decide whether [a defendant] has adhered to the statute [the Fair Credit Reporting Act], a court need only determine whether the four corners of the offer satisfy the statutory definition (as elaborated in [*Cole v. U.S. Capital, Inc.,* 389 F.3d 719 (7th Cir. 2004)]).... ***These questions readily may be resolved for a class as a whole****.* [*Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 956 (7th Cir. 2006) (emphasis added).]

Since *GMAC Mortgage*, District Judges have followed the Seventh Circuit's holdings in numerous cases. For example, in a case with a similar fact pattern, the Court

found that the class action procedure was superior to all other resolution methods,

holding that

> a class action is a superior method of adjudication when "economies of time, effort, and expense" are achieved "without sacrificing procedural fairness." [*Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997).] Additionally, a class action is an appropriate and superior means of adjudication when the potential recovery on a claim is "too slight to support individual suits, but injury is substantial in the aggregate." [*GMAC Mortgage*], 434 F.3d at 953 (citing *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344-345 (7th Cir. 1997)). Such is the case here. [*Claffey v. River Oaks Hyundai, Inc.*, 238 F.R.D. 464, 468 (N.D.Ill. 2006).]

See also, *e.g.*, *Murray v. E\*Trade Financial Corp.*, 240 F.R.D. 392 (N.D.Ill. 2006); *Cavin v. Home Loan Center, Inc.*, 236 F.R.D. 387 (N.D.Ill. 2006); *Murray v. New Cingular Wireless Services, Inc.*, 232 F.R.D. 295 (N.D.Ill. 2005).

## II.    CERTIFICATION OF CLASSES IN CONSUMER CLASS ACTIONS

Class actions are essential to enforce laws protecting consumers. As the court stated in *Eshaghi v. Hanley Dawson Cadillac Co.*, 574 N.E.2d 760, 766 (Ill. App. Ct. 1991):

> **In a large and impersonal society, class actions are often the last barricade of consumer protection.... To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action – private suits or governmental actions – have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective. The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer.**

*Accord*, *Clark v. TAP Pharma. Prods., Inc.*, 798 N.E.2d 123, 134 (Ill. App. Ct. 2003). Law relating to pursuit of FCRA claims on a classwide basis is no different.

### A.  *The Fair Credit Reporting Act*

2

Congress expressly recognized the propriety of a class action under the FCRA, by providing special damage provisions and criteria, in 15 U.S.C. § 1681n, for classwide relief. As a result, numerous FCRA class actions have been certified – including many handled by counsel representing plaintiff in this case, such as

The purpose of the FCRA, which was recently discussed by the United States Supreme Court wherein it stated that "[T]he Fair Credit Reporting Act has as one of its purposes to protect consumer privacy…" *United States v. Bormes*, 133 S. Ct. 12, 15, 184 L. Ed. 2d 317 (2012) (internal citations and quotations omitted) (emphasis in original). Class actions give consumers the ability to vindicate these statutory rights when they are violated on a broad scale, as they were in this case.

Discovery in this matter has not yet commenced; Plaintiffs respectfully submit that the evidence will show that Defendant violated the FCRA, willfully.

### B. The holdings of GMAC Mortgage support certification

*GMAC Mortgage* is on point supporting plaintiff's arguments that a class should be certified in this case. *GMAC Mortgage* held, in pertinent part, that:

1. the class action procedure "was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate" [*GMAC Mortgage*, 434 F. 3d at 953];

2. statutory damages provide relief for actual losses that are small and hard to quantify, without proof of injury [*Id*.]; and

3. an award to the class "that would be unconstitutionally excessive may be reduced.... but constitutional limits are best applied after a class has been certified [when] a judge may evaluate the defendant's overall conduct and control its total exposure" [*Id*. at 954 (citing *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003))].

These factors set forth by the Seventh Circuit clearly indicate that the matter before this Court is suitable for class certification. Proof in this case is standardized—from the credit reports that were given to Plaintiffs and other customers.

## III.    STANDARD FOR CLASS CERTIFICATION

Class actions are essential to enforce laws protecting consumers. As the Court stated in *Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill.App.3d 995, 574 N.E.2d 760 (Ill.Ct.App. 1991):

> In a large and impersonal society, class actions are often the last barricade of consumer protection.... To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action—private suits or governmental actions—have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective. The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer. [*Id.*, 574 N.E.2d at 764, 766.]

Cases essentially the same as the present one, and brought by counsel who are Representing Plaintiffs here, were certified as class actions in: *Baier, et al v. FleetBoston Financial*, USDC EDPA, 04-0507; *Keener, et al v. Sears Roebuck,* EDCV-03-01265-RT (SGLx)**;** *Nienaber v. Citibank***,** USDC Southern District of South Dakota, 2007 WL 5404595; and *Sleezer v. Chase Bank USA, N.A.*, Civ. No. SA-07-CA-0961 (W.D. Tex. 2009). In each of these cases, as well as others listed in Lyons Decl., Plaintiffs' counsel have been appointed as class counsel, having been found adequate under Fed.R.Civ.P. 23(a)(4).

Classes have been certified in a number of other FCRA cases as well. *Wood v. Capital One Auto Finance*, 2006 U.S. Dist. LEXIS 67513 (E.D.Wis. Sept. 19, 2006). See

also *In re Farmers Insurance Co., Inc., FCRA Litigation,* 2006 U.S. Dist. LEXIS 27290
(W.D.Okla. Apr. 13, 2006); *In re Trans Union Corp. Privacy Litigation*, 2005 U.S. Dist.
LEXIS 17548 (N.D.Ill. August 17, 2005); *Thomas v. NCO Financial Systems, Inc.*, 2004
U.S. Dist. LEXIS 5405 (E.D.Pa., March 31, 2004) (settlement; illegal "reaging" of old
debts on credit reports); *Perry v. FleetBoston Financial Corp.*, 229 F.R.D. 105 (E.D.Pa.
2005) (settlement; illegal accessing of credit reports); *Clark v. Experian Information
Solutions, Inc.*, 2004 U.S. Dist. LEXIS 28324 (D.S.C., Jan. 14, 2004) (settlement, improper
reporting of debts); *Ciccarone v. B. J. Marchese, Inc.*, 2004 U.S. Dist. LEXIS 26489
(E.D.Pa., Dec. 14, 2004), later opinion, 2004 U.S. Dist. LEXIS 25747 (E.D.Pa., Dec. 22,
2004) (settlement; alleged unauthorized accessing of consumer reports); *Stoner v. CBA
Information Services,* 352 F.Supp.2d 549 (E.D.Pa. 2005) (settlement; alleged policy of
refusing to investigate consumer disputes regarding items on their credit reports); *Ashby v.
Farmers Ins. Co.,*, 2004 U.S. Dist. LEXIS 21053 (D.Ore. Oct. 18, 2004) (class certified in
action alleging failure to give notice of adverse action); *Braxton v. Farmer's Ins. Group,*
209 F.R.D. 654 (N.D.Ala. 2002) (similar); *White v. Imperial Adjustment Corp.*, 2002 U.S.
Dist. LEXIS 26610 (E.D.La., Aug. 6, 2002), affirmed by unpublished opinion, 2003
U.S.App. LEXIS 20162 (5th Cir., Oct. 2, 2003), later opinion, 2005 U.S.Dist. LEXIS
13382 (E.D.La., June 28, 2005) (impermissible accessing of consumer reports); and
*Mathews v. Government Employees Ins. Co.,* 23 F.Supp.2d 1160 (S.D.Cal. 1998) (same).

In the present case, the critical issues are (a) whether defendants had a practice of
accessing Plaintiffs credit files without a permissible purpose; and (b) whether defendants
thereby willfully violated FRCA. Such claims can be resolved, in part or in whole, at

summary judgment, as was the case in actions involving the prescreening of credit information. *Murray v. IndyMac Bank, FSB*, 461 F.Supp.2d 645 (N.D.Ill. 2006); *Murray v. Sunrise Chevrolet, Inc.*, 441 F.Supp.2d 940 (N.D.Ill. 2006). Both of these inquiries are uniform with respect to the entire class, and will be decided on facts that apply equally to all class members.

This Court has the discretion to adjust the statutory damages, if necessary, to address any concerns about the size of a potential award to the class, after class certification is granted. *GMAC Mortgage* held that a limitation on supposedly excessive damages, on due process grounds, is best applied after a class has been certified. Then a judge may evaluate the defendants' overall conduct and control its total exposure. "Reducing recoveries by forcing everyone to litigate independently—so that constitutional bounds are not tested, because the statute cannot be enforced by more than a handful of victims—has little to recommend it." *GMAC Mortgage*, 434 F.3d at 954.

Furthermore, possibility of excessive damages "might be invoked, not to prevent certification, but to nullify that effect and reduce the aggregate damage award." *Parker v. Time Warner Entertainment Co.,* 331 F.3d 13, 22, 27-28 (2d Cir. 2003); *State of Texas v. American Blast Fax, Inc.,* 164 F.Supp.2d 892 (W.D.Tex. 2001) (same).

## IV. THE CLASS CERTIFICATION REQUIREMENTS HAVE BEEN MET

### A. Rule 23(a)(1) – Numerosity

Fed.R.Civ.P. 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." *Driver v. AppleIllinois LLC*, 265 F.R.D. 293, 300 (N.D.Ill. 2010) held that:

> **plaintiffs are not required to specify the exact number of persons in the class; a properly-supported estimate is sufficient. See *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989). A court may make common sense assumptions to determine class size. See *Hispanics United of DuPage Co. v. Village of Addison, Illinois*, 160 F.R.D. 681, 688 (N.D.Ill. 1995)** (quotations and citations omitted).

*Perdue v. Individual Members of the Indiana Board of Bar Examiners*, 266 F.R.D. 215, 218 (S.D.Ind. 2010), noted that:

> **the Seventh Circuit has not provided specific guidance about when a putative class is large enough to satisfy the numerosity requirement. However, in [*Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008)], the court assumed that fourteen individuals would be insufficient... Similarly, in *Pruitt v. City of Chicago*, 472 F.3d 925, 926 (7th Cir. 2006), the court noted that "joinder of fewer than 40 workers...would be practical" so class certification was inappropriate.**

This is in line with the basic presumption that joinder of more than 40 persons is generally considered impractical. *Hale*, *supra*, 264 F.R.D. at 404-405 (N.D.Ill. 2009) (citing *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969)).

On information and belief, there are at least 40 individuals in each class, and given the size and scope of Defendant's operations. And also given that, and the number of bankruptcies brought year on year until the change to the Bankruptcy Code in October 2005, it is safe to presume that the number of persons affected would be enough to make joinder impractical. Plaintiffs will seek to ascertain the exact number of class members.

### B. Rules 23(a)(2) and 23(b)(3) – Commonality and Predominance

Fed.R.Civ.P. 23(a)(2) requires that there be a common question of law *or* fact. Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members. *Hale*, *supra*, 264 F.R.D. at 405, 407, held that:

> **Commonality generally exists when the has engaged in "standardized conduct" toward the members of the proposed class. *Smith v. Nike Retail Servs., Inc.*, [234 F.R.D. 648, (N.D. Ill. 2006)]. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992)....**

More generally, *Halverson v. Convenient Food Mart, Inc.*, 69 F.R.D. 331, 334 (N.D. Ill. 1974) held that satisfaction of the predominance requirement of Fed.R.Civ.P. 23(b)(3) "normally turns on the answer to one basic question: is there an essential common factual link between all class members and the defendant for which the law provides a remedy?" *Accord*, *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 310 (N.D.Ill. 1995). See *Walker v. Calusa Investments, LLC*, 244 F.R.D. 502, 506-507 (S.D.Ind. 2007) (similar).

In this case, the essential fact that links all members of the classes is that Defendant violated the FCRA, by accessing consumers credit reports without a permissible purpose under the Act. This foul was identical for each class member.

The only individual issue is the identification of the members of the classes, and how much each class member incurred in actual damages (*i.e.*, how many times Defendant accessed each consumer's credit report) – matters which are capable of ministerial determination from Defendant's records. Questions readily answerable from a Defendant's files do not present an obstacle to class certification. *Heastie v. Community Bank*, 125 F.R.D. 669 (N.D. Ill. 1989) found that the commonality and predominance requirements

were met even though there were individual questions of injury and damages; those questions could be answered "merely comparing the contract between the consumer and the contractor with the contract between the consumer and Community Bank." *Accord*, *George v. Kraft Foods Global, Inc.*, 251 F.R.D. 338, 347 (N.D.Ill. 2008) ("some factual variation among the class grievances will not defeat a class action.... so long as those individual issues are manageable through bifurcated hearings or some other mechanism that allows the common issues to be adjudicated together").

The Seventh Circuit has held that the need for "separate proceedings of some character ... to determine the entitlements of the individual class members to relief" should "not defeat class treatment of the question whether defendants violated [the law]." *Carnegie v. Household International, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). "Once that question is answered, if it is answered in favor of the class, a global settlement... will be a natural and appropriate sequel. And if there is no settlement, that won't be the end of the world. Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues. Those solutions include (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class member concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class." *Id.*

### C. Rule 23(a)(3) – Typicality

Fed.R.Civ.P. 23(a)(3) requires that the claims of a named plaintiff be typical of the claims of the classes. *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998), held that "[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." (Citation and internal quotation marks omitted.) *Accord*, *Driver*, *supra*, 265 F.R.D. at 304.

In the instant case, typicality is inherent in the class definitions. By definition, the members of the classes were subjected to the same practices as the Plaintiffs. Plaintiffs' claims and the claims of the members of each class all turn on the legality of Defendant's conduct.

### D. Rule 23(a)(4) – Adequacy of representation

The rule also requires that a named plaintiff provide fair and adequate protection for the interests of the class. That protection involves two factors: (a) a plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) a plaintiff must not have interests antagonistic to those of the class. *Rosario*, *supra*, 963 F.2d at 1018. *Accord*, *Hale*, *supra*, 264 F.R.D. at 406.

Both of these considerations are satisfied here. Plaintiffs understand the obligations of a class representative, and has retained experienced counsel – as shown by a declaration by Plaintiffs' counsel, which sets forth counsel's qualifications. (*See Lyons Decl.*) Further, both Plaintiffs and members of the classes seek money damages as the result of Defendant's unlawful practices, provided for by 15 U.S.C. § 1681n.  Given the identity of claims between Plaintiffs and members of the classes, there is no potential for conflicting

interests in this action. There is no antagonism between the interests of the named Plaintiffs and those of the classes.

### E. Rule 23(b)(2) and 23(b)(3) – Propriety and Superiority

In *GMAC Mortgage*, the Seventh Circuit held that cases such as this one, where hundreds of people have exactly the same claim, are well-suited for class resolution:

> [Fed.R.Civ.P] 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate. See, *e.g.*, *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344-345 (7th Cir. 1997). Reliance on federal law avoids the complications that can plague multi-state classes under state law, see *In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*, 288 F.3d 1012 (7th Cir. 2002), and society may gain from the deterrent effect of financial awards. The practical alternative to class litigation is punitive damages, not a fusillade of smallstakes claims. See *Mathias v. Accor Economy Lodging, Inc.*, 347 F.3d 672 (7th Cir. 2003). [*GMAC Mortgage*, 434 F.3d at 953.]

Generally speaking, efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. *Eovaldi v. First Nat'l Bank,* 57 F.R.D. 545 (N.D.Ill. 1972). The Court is required to determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy. *Hurwitz v. R.B. Jones Corp.,* 76 F.R.D. 149 (W.D.Mo. 1977). It is proper for a court, in deciding the "best" available method, to consider the "....inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161, 1165 (7th Cir. 1974).

In this case there is no better method available for the adjudication of the claims which might be brought by each individual consumer. The vast majority of consumers are

undoubtedly unaware that their rights are being violated. Furthermore, the filing of hundreds, or thousands, of FCRA suits against Defendant would be unduly burdensome to the Courts; judicial efficiency would be greatly promoted through the adjudication of identical claims through a single proceeding.

The fact that there are large numbers of class members "is no argument at all" against certification. *Carnegie*, 376 F.3d at 660-661. "The more claimants there are, the more likely a class action is to yield substantial economies in litigation. It would hardly be an improvement to have in lieu of this single class action 17 million suits each seeking damages of $15 to $30....The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30. But a class action has to be unwieldy indeed before it can be pronounced an inferior alternative— no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied—to no litigation at all." *Id.*

*GMAC Mortgage* concurred with this view, finding that:

> reducing recoveries by forcing everyone to litigate independently—so that constitutional bounds are not tested, because the statute cannot be enforced by more than a handful of victims—has little to recommend it. [*GMAC Mortgage*, 434 F.3d at 954.]

The special efficacy of the consumer class action has been noted by the courts and is applicable to this case. *In re Folding Carton Antitrust Litigation,* 75 F.R.D. 727, 732 (N.D. Ill. 1977), noted that

> a class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs

of discovery and trial, many of them would not be able to secure relief if class certification were denied …. (Citations omitted.)

Furthermore, *Lake v. First Nationwide Bank,* 156 F.R.D. 615, 628-629 (E.D.Pa 1994) held that,

> given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller and Kane have discussed, in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59; see *e.g.*, *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiff to pool claims which would be uneconomical to litigate individually.') The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.

Class certification will provide an efficient and appropriate resolution of the controversy. *Zanni v. Lippold,* 119 F.R.D. 32, 35 (C.D.Ill. 1988).

## V.    CONCLUSION

The proposed classes meet the requirements of Rules 23(a), 23(b)(2) and 23(b)(3).

Plaintiffs respectfully request that this Court certify this action as a class action.

Dated this 26th day of September, 2013.

Respectfully Submitted,

By: s/Thomas J. Lyons Jr.

Thomas J. Lyons, Jr., Esq.
**CONSUMER JUSTICE CENTER P.A.**

13

367 Commerce Court
Vadnais Heights, MN 55127
Telephone:  651-770-9707
tommycjc@aol.com

Thomas J. Lyons, Sr., Esq.
Wis. Attorney Lic. No. 1019127
**LYONS LAW FIRM, P.A.**
367 Commerce Court
Vadnais Heights, MN 55127
Telephone:  651-770-9707
tlyons@lyonslawfirm.com

Eric L. Crandall, Esq.
Wis. Attorney Lic. No. 1001833
**CRANDALL LAW OFFICES, SC**
1237 Knowles Avenue North
PO Box 27
New Richmond, WI 54017
715-246-1010
consumerlaw@frontiernet.net

**ATTORNEYS FOR PLAINTIFFS**

14