UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

JON GERMAIN, ELIZABETH GERLACH,
AMBER RHY, ANGELA MIDDLETON,
BRUCE MIDDLETON, JENNIFER PRISSEL
and TODD PRISSEL, on behalf of themselves
and all others similarly situated,

        Plaintiff,

v.        Case No. 13-CV-00676

BANK OF AMERICA, N.A.,

        Defendant.

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

I. **INTRODUCTION AND SUMMARY OF ARGUMENT** ...............................................1
II. **FACTS** ........................................................................................................................2
III. **LEGAL STANDARD ON A MOTION TO DISMISS.** ....................................................5
IV. **LEGAL ARGUMENT**......................................................................................................6
    A.    PLAINTIFFS FAIL TO ALLEGE THAT BANA LACKED A PERMISSIBLE PURPOSE FOR ACCESSING THE CREDIT REPORTS. ................................... 6
        1.    Plaintiffs' reliance on *Godby* is unfounded because *Godby* is factually distinguishable. .......................................................................................... 7
        2.    BANA's liens and the Plaintiffs' obligations were not extinguished until the foreclosure actions were completed even if Plaintiffs' personal obligations were discharged........................................................................ 8
        3.    *Godby* is contrary to the actual language of the FCRA. .............................10
    B.    PLAINTIFFS DO NOT ALLEGE ANY RECOVERABLE DAMAGES AS A BASIS FOR A NEGLIGENT VIOLATION AND FAIL TO ALLEGE FACTS TO SUPPORT A WILLFUL VIOLATION TO RECOVER THE STATUTORY DAMAGES THEY SEEK ............................................................................... 12
VI. **CONCLUSION** ...........................................................................................................13

# **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................. 5

*Banga v. Experian Information Solutions, Inc.*,
  No. C-09-04867, 2013 WL 5539690 (N.D. Cal., Sept. 30, 2013) .......................... 11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 54 (2007) .................................................................................................. 5

*Dewsnup v. Timm*,
  502 U.S. 410 (1992) ................................................................................................ 8

*General Elec. Capital Corp. v. Lease Resolution Corp.*,
  128 F.3d 1074 (7th Cir.1997) ............................................................................. 5, 6

*Godby v. Wells Fargo Bank, N.A.*,
  599 F. Supp. 2d 934 (S.D. Ohio 2008) ......................................................... 2, 7, 10

*Harvest Savings Bank v. ROI Investments*,
  209 Wis. 2d 586, 563 N.W.2d 579 (Ct. App. 1997) ............................................... 9

*Henson v. CSC Credit Servs.*,
  29 F.3d 280 (7th Cir. 1994) .................................................................................... 5

*Hobl v. Lord*,
  162 Wis. 2d 226, 470 N.W.2d 265 (1991) ............................................................. 9

*Huertas v. Galaxy Asset Management*,
  641 F.3d 28 (3rd. Cir. 2011) ................................................................................. 11

*In re Amoakohene*,
  299 B.R. 196 (Bankr. N.D. Ill. 2003) ..................................................................... 3

*In re Crooks*,
  148 B.R. 867 (Bankr. N.D. Ill. 1993) ..................................................................... 3

*In re Shondel*,
  950 F.2d 1301 (7th Cir. 1991) ................................................................................ 8

*Johnson v. Home State Bank*,
  501 U.S. 78 (1991) .............................................................................................. 8, 9

*Levine v. World Financial Network Nat. Bank*,
  554 F.3d 1314 (11th Cir. 2009) ............................................................................ 11

*Matter of Edwards*,
  901 F.2d 1383 (7th Cir. 1990) ................................................................................ 3

*Pugh v. Tribune Co.*,
  521 F.3d 686 (7th Cir. 2008) .................................................................................. 5

*Safeco Insurance Company of America v. Burr*,
  551 U.S. 47 (2007) ........................................................................................... 12, 13

QB\148825.00034\24056480.1

*Shlahtichman v. 1-800 Contacts, Inc.*,
   615 F.3d 794 (7th Cir. 2010) ............................................................................... 10, 11

*Tamayo v. Blagojevich*,
   526 F.3d 1074 (7th Cir. 2008) ..................................................................................... 5

*United States v. Wood*,
   925 F.2d 1580 (7th Cir.1991) ...................................................................................... 5

*Virnich v. Vorwald*,
   664 F.3d 206 (7th Cir. 2012) ....................................................................................... 5

*Wilting v. Progressive County Mutual Ins.*,
   227 F.3d 474 (5th Cir. 2000) ..................................................................................... 11

*Yeftich v. Navistar, Inc.*,
   722 F.3d 911 (7th Cir. 2013) ....................................................................................... 5

**Statutes**

15 U.S.C. § 1681b(a)(3) ...................................................................................................... 6, 7

15 U.S.C. § 1681n(a) ........................................................................................................... 12

15 U.S.C. § 1681n(o) ........................................................................................................... 12

15 U.S.C. 1681b(3)(F) ......................................................................................................... 10

15 U.S.C. 1681b(a)(3)(A) .................................................................................................... 10

15 U.S.C.§ 1681b(f) ............................................................................................................... 6

Wis. Stat. § 846.13 ................................................................................................................. 9

Wis. Stat. § 846.142 ............................................................................................................... 9

**Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 5

I.      **INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiffs, individually and on behalf of a putative class, seek statutory damages based on Bank of America's ("BANA") allegedly willful violation of the Fair Credit Reporting Act ("FCRA"), which prohibits accessing a person's credit report without a permissible purpose. Specifically, Plaintiffs allege BANA willfully violated the FCRA by obtaining Plaintiffs' credit reports after they each received a Chapter 7 bankruptcy discharge. Plaintiffs concede that they each held a mortgage loan with BANA, but contend that the bankruptcy discharges terminated any relationship with BANA that could support a permissible purpose for BANA to access Plaintiffs' credit reports.

Plaintiffs' claims fail, however, because public records filed in the bankruptcy proceedings confirm that each Plaintiff intended to remain in the property, and affirmatively sought to continue making payments to BANA. Based on these documents, it is beyond dispute that the relationship between each Plaintiff and BANA continued beyond the bankruptcy proceedings—indeed, it is clear that Plaintiffs *wanted* those relationships to continue. In the context of such an ongoing relationship, the FCRA recognizes numerous legitimate reasons to access a customer's credit report. Accordingly, Plaintiffs have failed to allege that BANA lacked a permissible purpose as defined in the FCRA.

Moreover, even if Plaintiffs adequately alleged that BANA lacked a legitimate purpose for accessing each Plaintiff's credit report, the Complaint would still fail to allege facts that would entitle Plaintiffs to relief. There are two tiers of recovery under the FCRA. If a violation is negligent, the plaintiff is entitled to actual damages under 15 U.S.C. § 1681o(a). If a violation is willful, the plaintiff may be entitled to actual damages, statutory damages, and punitive damages under 15 U.S.C. § 1681n(a). Here, Plaintiffs do not allege any actual damages, the only available remedy for a negligent violation but, instead, seek statutory damages available only if

the violation is willful. However, because Plaintiffs fail to allege any facts to support a willful violation of the FCRA, their claims must be dismissed.

## II. FACTS

This action is another episode in a complicated history between Plaintiffs and Defendant. Plaintiffs concede that they were BANA customers. Compl. ¶¶ 11, 13, 16, 19, 21, 24, 26. Between the years of 2008 to 2010, each Plaintiff filed a Chapter 7 bankruptcy petition and listed BANA or its predecessor, Countrywide Home Loans, on their petition as a creditor. Compl.¶¶ 11, 13, 16, 19, 21, 24, 26. Plaintiffs contend that during the bankruptcy proceedings their mortgage loan was discharged, and this ended any relationship between each Plaintiff and BANA. Compl. ¶¶ 11, 13, 16, 19, 21, 24, 26. BANA then instituted foreclosure proceedings against each Plaintiff between the years 2008 to 2012. Compl. ¶¶ 11, 14, 17, 19, 22, 24, 26. Plaintiffs claim that after their bankruptcy proceedings, BANA accessed their credit report. Compl. ¶¶ 11, 14, 17, 19, 21, 24, 26. Plaintiffs contend that because the relationship between Plaintiffs and BANA ended during bankruptcy, BANA lacked a permissible purpose to access each Plaintiff's credit report. Compl. ¶¶ 11, 14, 17, 19, 21, 24, 26.

Plaintiffs do not allege any actual damages but instead allege a cause of action for statutory damages for violating 15 U.S.C. § 1681b and § 1681n by willfully accessing Plaintiffs' credit files without a permissible purpose under the Act. (Compl. ¶ 53.) As a result of the alleged violations, the Plaintiffs are seeking statutory damages, punitive damages, and reasonable attorneys' fees. (Compl. ¶ 54.) The sole basis for their claim of willfulness is that the Defendant allegedly cannot establish any "bona fide error," "good faith," or other similar defense to the access of the Plaintiffs' credit reports, as the "unlawful nature" of the access is clearly established in the law at the time of the access citing a case, *Godby v. Wells Fargo Bank, N.A.*, 599 F. Supp. 2d 934 (S.D. Ohio 2008). (Compl. ¶¶ 36, 38.)

Although Plaintiffs contend that the relationship between Plaintiffs and BANA ended during bankruptcy, the relevant public court filings tell a different story.[1] As reflected in the bankruptcy and subsequent foreclosure actions, Plaintiffs chose to keep making payments to BANA and remain in possession of the property. To this end, six of the seven Plaintiffs created an "other" option on their Statement of Intent filed in their bankruptcy actions, electing to retain the property and continue to make payments on the debt:

- Plaintiff Elizabeth Gerlach: "Debtor will retain collateral and continue to make regular payments." Declaration of Valerie Bailey-Rihn (hereinafter, "Bailey-Rihn Decl."), Exh. 2A.

- Plaintiff Amber Rhy: Property retained and "Ongoing Payments" to be made. *Id.*, Exh. 3A.

- Plaintiff Angela Middleton: Property retained and debtors will "continue payments" on property. *Id.*, Exh. 4A.

- Plaintiff Bruce Middleton: Property retained and debtors will "continue payments" on property. *Id.*

- Plaintiff Jenifer Prissel: "Debtor will retain collateral and continue to make regular payments." *Id.*, Exh. 5A.

- Plaintiff Todd Prissel: "Debtor will retain collateral and continue to make regular payments." *Id.*[2]

---

[1] In deciding a motion to dismiss, a district court may take judicial notice of matter of the public record such as court filings. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). Here, Defendant BANA asks this Court to take judicial notice of the court dockets and filings attached to the Declaration of Valerie Bailey-Rihn, which is being filed with this Brief.

[2] It should be noted that the option of "retain and maintain" the property without reaffirming the debt in Chapter 7 bankruptcy is contrary to well-established law in the Seventh Circuit. *Matter of Edwards*, 901 F.2d 1383, 1387 (7th Cir. 1990) (the Bankruptcy code "requires a debtor to choose between the reaffirmation, redemption or surrender of property" and may not simply retain the property with the intention of continuing payments); *In re Crooks*, 148 B.R. 867, 871 (Bankr. N.D. Ill. 1993) (a Chapter 7 debtor may not retain property of the estate that is collateral for a consumer debt unless that debtor either redeems the property or reaffirms the debt); *In re Amoakohene*, 299 B.R. 196, 203 (Bankr. N.D. Ill. 2003) (the Bankruptcy Code balances debtor-creditor rights in very specific ways that are actually inconsistent with permitting the unstated fifth "retain and maintain" option).

Plaintiff Jon Germain did not file a statement of intent regarding the property mortgaged with BANA, but designated the property as subject to a foreclosure action.[3]

After the bankruptcy proceedings in which Plaintiffs elected to retain the properties at issue, Plaintiffs remained delinquent on the debt, resulting in foreclosure actions being instituted by BANA. During the foreclosure proceedings, Plaintiffs again attempted to remain in possession of the property. Public documents filed by Plaintiffs further evidence Plaintiffs intent to retain the property:

- Plaintiffs Bruce and Angela Middleton stated in an affidavit in support of a stay of the foreclosure judgment entered against them that the judgment was entered improperly due to BANA's lack of standing to foreclose and that a stay should be granted due to the fact that the Middletons "have spent approximately $10,000.00 in making improvements and have spent well over 500 hours of [their] own time making improvements to the home." Bailey-Rihn Decl., Exh. 4C.

- Plaintiffs Jennifer Prissel, Todd Prissel, Elizabeth Gerlach, and Jon Germain all attempted to defeat the foreclosure by asserting the affirmative defense that BANA had failed "to offer [them] loss mitigation prior to initiating foreclosure proceedings." *Id.*, Exhs. 1D, 2C, 5C.

- Plaintiff Amber Rhy, referring to her mortgage, stated that she had "designated these claims as '**disputed**'" in her bankruptcy filing and argued that this does not preclude her from contesting BANA's standing to foreclose. (*See id.*, Exh. 3C, at 9.)

---

[3] *See* Bailey-Rihn Decl., Exh. 1B. Germain defended this action and it was ultimately dismissed. *Id.* As the mortgage continued to remain in default, Bank of America filed another foreclosure in May 2012. *Id.*, Exh. 1C. This is the foreclosure action the Plaintiffs cite to in paragraph 11 of the Complaint.

Taken together, the bankruptcy and foreclosure filings clearly demonstrate that Plaintiffs intended to and succeeded in continuing a relationship with BANA after the bankruptcy proceedings.

### III.     LEGAL STANDARD ON A MOTION TO DISMISS.

A motion to dismiss for failure to state a claim tests the legal sufficiency of a complaint. Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, the plaintiff must allege facts sufficient to demonstrate that its claim for relief is plausible on its face.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 54, 570 (2007); *see also Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).  In reviewing the complaint, the Court must accept as true all well-pleaded facts.  *Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008). The Court need not accept legal conclusions or unsupported conclusions of fact, however, even when pleaded as factual allegations.  *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2012).  Just as a complaint must be dismissed if it fails to state a claim for relief, plaintiff can also "plead itself out of court by pleading facts that establish an impenetrable defense to its claims." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008).

A district court "may also take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment."  *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (district court properly considered public court documents in deciding the defendants' motions to dismiss) (*citing United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991)); *see also General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997) (matters of public record, such as the contents of court records, are judicially noticeable facts). The reason for allowing courts to consider such records is "to avoid unnecessary proceedings when an undisputed fact in the public record establishes that the plaintiff cannot satisfy the 12(b)(6) standard." *General Elec. Capital Corp.*,

- 5 -

128 F.3d at 1081. Here, the Complaint and public records demonstrate that the plaintiffs cannot satisfy the 12(b)(6) standard.

## IV. LEGAL ARGUMENT

### A. PLAINTIFFS FAIL TO ALLEGE THAT BANA LACKED A PERMISSIBLE PURPOSE FOR ACCESSING THE CREDIT REPORTS.

Plaintiffs bear the burden of alleging that BANA lacked a permissible purpose to access Plaintiff's credit reports and they have not met this burden. Under FCRA, a person must have a permissible purpose to request a credit report. 15 U.S.C.§ 1681b(f). The permissible purposes to obtain a consumer report are found in 15 U.S.C. § 1681b(a)(3) and include the following:

> A consumer reporting agency may furnish a consumer report . . .
>
> (3) to a person which it has reason to believe
>
> (A) intends to use the information in connection with a <u>credit transaction</u> involving the consumer . . . and involving . . . <u>review or collection of an account</u> of the consumer . . . or
>
> (F) otherwise <u>has a legitimate business</u> need for the information…
>
> (i) in connection with a <u>business transaction</u> that is initiated by the consumer.

15 U.S.C. § 1681b(a) (emphasis added).

Here, the record clearly establishes that each Plaintiff had an ongoing business relationship with BANA. Each Plaintiff held a mortgage loan with BANA prior to bankruptcy. And while Plaintiffs allege that the creditor/debtor relationship was ended in bankruptcy, the public records clearly demonstrate that is not the case. The records show that the relationship between Plaintiffs and BANA continued after the bankruptcy proceedings—because that is what *Plaintiffs wanted*. In court-filed documents, six of the named Plaintiffs expressly elected to continue making payments and retain the property, and the seventh Plaintiff sought workout relief in a subsequent foreclosure action. These are not the actions of customers whose

accounts/transactions/relationships have been terminated. Indeed, the continuing interactions between Plaintiffs and BANA demonstrate the ongoing account/transactions/relationship between Plaintiffs and BANA called for by § 1681b(a)(3).

### 1. Plaintiffs' reliance on *Godby* is unfounded because *Godby* is factually distinguishable.

Plaintiffs' sole basis for their assertion that BANA improperly accessed their credit reports appears to be *Godby v. Wells Fargo Bank, N.A.*, 599 F. Supp. 2d 934 (S.D. Ohio 2008). Plaintiffs cite *Godby* for the proposition that once a Chapter 7 discharge is received, the mortgage debt is extinguished and, consequently no creditor/debtor relationship remains which could permit the mortgage holder to pull a credit report. Compl. ¶ 37. *Godby* is clearly distinguishable.

In *Godby*, the Plaintiff filed a Chapter 7 bankruptcy Statement of Intention to surrender the real property that was mortgaged with the creditor. *Godby*, 599 F. Supp. 2d at 935. She also moved out of the property. *Id.* Focused on this fact, the Court concluded that "as a practical matter, the parties did not have an existing relationship" because the plaintiff had "surrendered her rights to the property" and, as such, there was no permissible purpose for obtaining a credit report. *Id.* at 942.

Unlike in *Godby*, here, each of the Plaintiffs elected to remain in their homes, continuing their relationship with BANA. Six of the seven Plaintiffs sought to remain in the property and continue to make monthly payments and indeed these elections by Plaintiffs are a matter of public record in their bankruptcy petitions. *See* Bailey-Rihn Decl., Exhs. 1A, 1B, 2A, 3A, 4A, 5A. Plaintiffs concede that Plaintiffs and BANA were engaged in foreclosure proceedings between the years 2008 to 2012. Compl. ¶¶ 11, 14, 17, 19, 22, 24, 26. In the foreclosure proceedings, Plaintiffs Jennifer Prissel, Todd Prissel, Elizabeth Gerlach, and Jon Germain all

continued their attempts to retain the property by asserting the affirmative defense that BANA had failed "to offer [them] loss mitigation prior to initiating foreclosure proceedings." *See* Bailey-Rihn Decl., Exhs. 1D at 4, 2C at 4, 5C at 3. All seven of the Plaintiffs made extensive filings in the foreclosure proceedings, vigorously defending the foreclosure actions and seeking to remain in the properties by means of loan modifications or other loan workout relief. *See id.*, Exhs. 1B, 1C, 1D, 2B, 2C, 3B, 3C, 4B, 4C, 5B, and 5C. Indeed, the public record demonstrates Plaintiffs fought to maintain a relationship with BANA.

2. **BANA's liens and the plaintiffs' obligations were not extinguished until the foreclosure actions were completed even if plaintiffs' personal obligations were discharged.**

To apply the *Godby* case to these circumstances would also ignore the nature of the relationship that continues to exist between lender and borrower throughout the foreclosure process. In *Dewsnup v. Timm*, 502 U.S. 410, 418 (1992), the United States Supreme Court held that a creditor's lien stays with the real property until foreclosure despite the debtor's bankruptcy filing. Thus, the only thing that is discharged after a Chapter 7 discharge is the personal liability of the debtor, not the debt. *See In re Shondel*, 950 F.2d 1301, 1306 (7th Cir. 1991). Section 524(a) provides that "a discharge operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any such debt as a personal liability of the debtor . . . ." *Id*. On its face, the discharge provision prevents suits and renders judgments void only with respect to the "personal liability" of the debtor. It does not preclude a determination of the debtor's liability on the basis of which indemnification would be owed by any other party. *Id*.

It is black letter law that a mortgage that survives a Chapter 7 discharge is still a claim or a debt regardless of whether the personal liability has been discharged. *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991). Even after the debtor's personal obligations have been

- 8 -

extinguished, the mortgage holder still retains a "right to payment" in the form of its right to the proceeds from the sale of the debtor's property. *Id*. Alternatively, the creditor's surviving right to foreclose on the mortgage can be viewed as a "right to an equitable remedy" for the debtor's default under the underlying obligation. *Id*. Either way, there can be no doubt that the surviving mortgage interest corresponds to an "enforceable obligation" of the debtor. *Id*. Under Wisconsin law, it is only after the foreclosure sale is confirmed that the underlying obligation is satisfied. *Harvest Savings Bank v. ROI Investments*, 209 Wis. 2d 586, 563 N.W.2d 579 (Ct. App. 1997).

Moreover, the Plaintiffs in this case had a right under Wisconsin law to redeem the property after the foreclosure judgment is entered and before the sheriff's sale of the property. Wis. Stat. § 846.13. However, the amount that the Plaintiffs could redeem the property for is the total amount of the debt, not the value of the property at the time of the discharge. *Hobl v. Lord*, 162 Wis. 2d 226, 241, 470 N.W.2d 265 (1991). In *Hobl*, the debtor had filed a Chapter 7 bankruptcy and received a discharge. *Id*. at 231. The debtor then attempted to redeem the value of its property after the foreclosure judgment at the fair market value of the property at the time of the bankruptcy, arguing that the unsecured portion of the lien was void under Bankruptcy Code § 506. *Id*. The Wisconsin Supreme Court rejected that argument and provided that the mortgagor may only redeem mortgaged property for the amount of the foreclosure judgment plus interest, costs and taxes. *Id*. at 241. Similarly, a person has a right to any surplus obtained at the foreclosure sale to the extent it existed, regardless of whether their debt had been discharged in bankruptcy, but it would be any surplus over the contractual amount owned, not the value of the property as of the time of the bankruptcy. Wis. Stat. § 846.142. Thus under Wisconsin law, the debt is not extinguished until after the foreclosure sale is confirmed, only the personal liability.

As such, BANA continued to have a relationship with each of the Plaintiffs that would support a permissible purpose to pull their credit reports. It is the Plaintiffs' burden to allege facts that suggest an impermissible purpose and they have not done so.

### 3. *Godby* is contrary to the actual language of the FCRA.

Even if *Godby* were otherwise applicable here, it is wrongly decided to the extent it holds that only active "current accounts" can be reviewed or collected upon and therefore, once an account is closed or the consumer receives a discharge, no account review can take place. *Godby* 599 F.Supp.2d at 942.

Even the *Godby* Court recognized that there was a split in decisions as to whether the FCRA imposed restrictions on when, in the lending relationship, creditors can pull credit reports. *Id*. at 938-39. Indeed, the language of the statute does not put a temporal limitation on the term "account." The relevant sections at issue in this case only requires an 1) intent to use the information, 2) in connection with a credit transaction, 3) to review the account or a 1) legitimate business need 2) in connection with a transaction initiated by the consumer. 15 U.S.C. 1681b(a)(3)(A) & (3)(F). If those statutory elements are met, a creditor has a permissible purpose in obtaining a credit report regardless of whether the account is open or closed.

Cases after *Godby* have confirmed that the statute should be read literally. In *Shlahtichman v. 1-800 Contacts, Inc.,* 615 F.3d 794, 802 (7th Cir. 2010), the Seventh Circuit stated that it could not ignore the unambiguous language of the FCRA statute in order to further Congress' express purpose in enacting the statute to prevent identity theft. *Id*. Thus, the Seventh Circuit rejected a claim that an email receipt violated the FCRA by including the full credit card number since both the language and the context of the truncation requirement made plain that Congress was regulating only the receipts physically printed. *Id*. Therefore, an e-mail receipt could not violate the statute even if the receipt did not truncate the credit card number. *Id*.

- 10 -

Indeed, courts have explicitly held that the FCRA can allow the furnishing of a credit report even where the account has closed or the debt is no longer enforceable. In *Banga v. Experian Information Solutions, Inc.*, No. C-09-04867, 2013 WL 5539690 at * 2 (N.D. Cal. 2013) (copy attached), the court held that a credit reporting agency was entitled to summary judgment on the plaintiff's claim for willfully distributing her credit report for "account review" purposes after the plaintiff had closed her account. It stated that the plain language of the FCRA does not prohibit a consumer reporting agency from furnishing a consumer credit report to a former creditor for account review purposes. *Id*. at *6. The Court cited as support *Levine v. World Financial Network Nat. Bank*, 554 F.3d 1314 (11th Cir. 2009), in which the 11th Circuit held that it was objectively reasonable to interpret FCRA "permissible purposes" to include obtaining reports for closed accounts. *Levine*, 554 F.3d at 1318-1319; *see also Wilting v. Progressive County Mutual Ins. Co.*, 227 F.3d 474, 476 (5th Cir. 2000) (neither the Act nor the FTC commentary on the Act suggests that a report may only be permissibly obtained during particular points in the party's relationship, rejecting the argument that only existing accounts can be obtained).

Similarly, in *Huertas v. Galaxy Asset Management*, 641 F.3d 28, 32 (3rd. Cir. 2011), the Court held that an obligation was not extinguished by the expiration of the six year statute of limitation even though the debt was ultimately unenforceable. Therefore, a debt collector did not violate the FCRA for obtaining a consumer's credit report on a stale account. *Id*. at 34.

In all of these cases, courts have held that once a credit relationship exists, a creditor can pull a credit report if it demonstrates that the report is obtained to review an account even if the debt was paid or not ultimately collectable. Therefore, the *Godby* court erred when it determined that only active "current accounts" can be reviewed or collected upon and that, once an account

is closed or the consumer receives a discharge, no account review can take place. *Godby* is inconsistent with the prevailing interpretation of the FCRA.

### B. PLAINTIFFS DO NOT ALLEGE ANY RECOVERABLE DAMAGES AS A BASIS FOR A NEGLIGENT VIOLATION AND FAIL TO ALLEGE FACTS TO SUPPORT A WILLFUL VIOLATION TO RECOVER THE STATUTORY DAMAGES THEY SEEK

Even if Plaintiffs had sufficiently alleged a violation of the FCRA, the Complaint should be dismissed because Plaintiffs have failed to allege facts that would allow them to recover for either a willful violation or a negligent violation.

Plaintiffs do not allege, or claim, actual damages. Instead, they seek only statutory damages. Compl. ¶ 54. Because Plaintiffs do not allege actual damages, they assert no basis for recovery for a negligent violation of the FCRA. 15 U.S.C. § 1681n(o). To be entitled to the statutory damages they do seek, Plaintiffs must demonstrate a willful violation of the FCRA. 15 U.S.C. § 1681n(a). Because Plaintiffs fail to allege facts that would support the conclusion that the alleged violations were willful, Plaintiffs complaint must be dismissed.

In *Safeco Insurance Company of America v. Burr*, 551 U.S. 47, 57-60 (2007), the Supreme Court established that the standard for willfulness requires a showing of more than mere carelessness and at least reckless disregard. Further, the Court held that "a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69 (2007). The Court found that the creditors conduct was objectively reasonable and not a reckless violation due to the "less-than-pellucid" FCRA text and a lack of guidance from a Court of Appeals or the Federal Trade Commission. *Id.* at 70. Therefore, even if a defendant violates FCRA, it cannot be considered a reckless violation as long as the action was not directly contrary

- 12 -

to the text of FCRA and there was no contrary guidance from a Court of Appeals or the Federal Trade Commission. *Id*.

Here, Plaintiffs allege no facts establishing that BANA's alleged violation of the FCRA was reckless. According to Plaintiffs, the only ground for a finding of willfulness is that BANA should have been aware of the *Godby* case. As set forth above, however, *Godby* is factually distinguishable from the case at hand and contrary to the prevailing interpretation of the FCRA. In light of the records clearly show a continuing relationship between Plaintiffs and BANA, and the absence of any applicable "contrary" guidance from the courts, there are no facts which would justify a finding that BANA willfully violated FCRA.

## V. CONCLUSION

For the above reasons, the Defendant respectfully request that its motion to dismiss be granted.

Dated November 18, 2013.

Valerie L. Bailey-Rihn
State Bar No. 1000728
Rachel A. Graham
State Bar No. 1069214

/s/ Valerie L. Bailey-Rihn
QUARLES & BRADY LLP
33 East Main Street
Suite 900
Madison, WI  53703
608.251.5000
val.bailey@quarles.com
rachel.graham@quarles.com

David S. Reidy
Marc Lackner
Reed Smith LLP
101 Second Street, Suite 1800
San Francisco CA94105
415.659.5933
dreidy@reedsmith.com

*Attorneys for Defendant, Bank of America, N.A.*

- 13 -