UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

JON GERMAIN, ELIZABETH GERLACH,
AMBER RHY, ANGELA MIDDLETON,
BRUCE MIDDLETON, JENNIFER PRISSEL
and TODD PRISSEL, on behalf of themselves
and all others similarly situated,

       Plaintiff,

   v.                                         Case No. 13-CV-00676

BANK OF AMERICA, N.A.,

       Defendant.

---

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
THE AMENDED COMPLAINT**

---

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................1

II.     PROCEDURAL HISTORY..................................................................................................2

III.    ALLEGATIONS AND FACTUAL BACKGROUND ........................................................2

      A.      PLAINTIFFS ALLEGE THAT THEY TERMINATED ANY RELATIONSHIP
              WITH BANA BEFORE THEIR CREDIT REPORTS WERE ACCESSED......... 2

      B.      PLAINTIFFS' BANKRUPTCY AND FORECLOSURE FILINGS SHOW THAT
              EACH PLAINTIFF HAD AN ONGOING RELATIONSHIP WITH BANA ....... 3

IV.     LEGAL STANDARD ON A MOTION TO DISMISS........................................................5

V.      LEGAL ARGUMENT.........................................................................................................6

      A.      PLAINTIFFS FAIL TO ALLEGE THAT BANA LACKED A PERMISSIBLE
              PURPOSE FOR ACCESSING THE CREDIT REPORTS……...……………….6

      B.      PLAINTIFFS' RELIANCE ON GODBY IS IMPROPER HERE ........................ 7

             1.      Godby is factually distinguishable and does not apply.............................. 7

             2.      BANA's liens and the plaintiffs' obligations were not extinguished until
                  the foreclosure actions were completed even if plaintiffs' personal
                  obligations were discharged........................................................................ 8

             3.      Godby is contrary to the actual language of the FCRA. ........................... 10

      C.      PLAINTIFFS DO NOT ALLEGE ANY RECOVERABLE DAMAGES AS A
              BASIS FOR A NEGLIGENT VIOLATION AND FAIL TO ALLEGE FACTS
              TO SUPPORT A WILLFUL VIOLATION TO RECOVER THE STATUTORY
              DAMAGES THEY SEEK ................................................................................... 12

      D.      THERE IS NO SHOWING THAT FURTHER LEAVE TO AMEND CAN
              CURE THE DEFECTS OF THE AMENDED COMPLAINT AND THE
              CLAIMS SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND .......... 13

VI.     CONCLUSION..................................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal,*
   556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)..........................................................5

*Banga v. Experian Information Solutions, Inc.,*
   2013 WL 5539690  (N.D. Cal. 2013) ..........................................................11

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 54, 570, 127 S.Ct. 155, 167 L.Ed.2d 929 (2007)..........................................................5

*CogniTest Corp. v. Riverside Pub. Co.,*
   107 F.3d 493 (7th Cir. 1997) ..........................................................5, 13

*Dewsnup v. Timm,*
   502 U.S. 410, 112 S. Ct. 773, 116 L.Ed2d 903 (1992)..........................................................8

*General Elec. Capital Corp. v. Lease Resolution Corp.,*
   128 F.3d 1074 (7th Cir.1997) ..........................................................5, 6

*Godby v. Wells Fargo Bank, N.A.,*
   599 F.Supp.2d 934 (S.D. Ohio 2008) ..........................................................7, 8, 10

*Harvest Savings Bank v. ROI Investments,*
   209 Wis. 2d 586, 563 N.W.2d 579 (Ct. App. 1997) ..........................................................9

*Henson v. CSC Credit Servs.,*
   29 F.3d 280 (7th Cir. 1994) ..........................................................5

*Hobl v. Lord,*
   162 Wis. 2d 226, 470 N.W.2d 265 (1991)..........................................................9, 10

*Huertas v. Galaxy Asset Management,*
   641 F.3d 28 (3rd. Cir. 2011) ..........................................................11

*In re Shondel,*
   950 F.2d 1301 (7th Cir. 1991) ..........................................................9

*J.D. Marshall Int'l, Inc. v. Redstart, Inc.,*
   935 F.2d 815 (7th Cir. 1991) ..........................................................13

*Johnson v. Home State Bank,*
   501 U.S. 78, 111 S. Ct. 2150, 115 L.Ed.2d 66 (1991)..........................................................9

*Levine v. World Financial Network Nat. Bank,*
   554 F.3d 1314 (11th Cir. 2009) ..........................................................11

*McGee v. Kerr–Hickman Chrysler Plymouth, Inc.,*
   93 F.3d 380 (7th Cir.1996) ..........................................................5, 13

*Pugh v. Tribune Co.,*
   521 F.3d 686 (7th Cir. 2008) ..........................................................5

*Safeco Insurance Company of America v. Burr,*
   551 U.S. 47 (2007)..........................................................12, 13

*Shlahtichman v. 1-800 Contacts, Inc.*,
    615 F.3d 794 (7th Cir. 2010) ................................................................... 11

*Tamayo v. Blagojevich*,
    526 F.3d 1074 (7th Cir. 2008) .................................................................. 5

*United States v. Wood*,
    925 F.2d 1580 (7th Cir.1991) .................................................................... 5

*Virnich v. Vorwald*,
    664 F.3d 206 (7th Cir. 2012) ..................................................................... 5

*Wilting v. Progressive County Mutual*,
    227 F.3d 474 (5th Cir. 2000) ................................................................... 10

*Yeflich v. Navistar, Inc.*,
    722 F.3d 911 (7th Cir. 2013) ..................................................................... 5

**Statutes**

15 U.S.C. § 1681b(3)(F) ............................................................................ 10

15 U.S.C. § 1681b(a) ................................................................................. 6

15 U.S.C. § 1681b(a)(3)(A) ....................................................................... 10

15 U.S.C. § 1681n(a) ................................................................................ 12

15 U.S.C. § 1681n(o) ................................................................................ 12

15 U.S.C. § 1681o(a) .................................................................................. 1

15 U.S.C.§ 1681b(f) ................................................................................... 6

Wis. Stat. § 846.13 ..................................................................................... 9

Wis. Stat. § 846.142 ................................................................................. 10

**Rules**

Fed. R. Civ. P. 12(b)(6) .............................................................................. 5

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs allege that Bank of America, N.A. ("BANA") accessed their credit reorts without a permissible purpose as required by the Fair Credit Reporting Act ("FCRA"). BANA's prior Motion to Dismiss demonstrated that these allegations were false. Public bankruptcy filings show that each Plaintiff sought to continue making payments to BANA under the mortgage loans at issue, thus providing a permissible purpose for BANA to access Plaintiffs' credit reports. Rather than contesting the Motion, the Gerlach and Prissel plaintiffs dropped their claims against BANA. As to the remaining named Plaintiffs (Germain, Rhy and the Middletons), their Amended Complaint still fails to state a valid cause of action against BANA.

This Court may take judicial notice of bankruptcy filings by Plaintiffs which clearly demonstrate that each Plaintiff *wanted* to continue a relationship with BANA, despite the bankruptcy discharges. Indeed, the ongoing relationship between Plaintiffs and BANA is not disputed. In the context of such an ongoing relationship, the FCRA recognizes numerous legitimate reasons to access a customer's credit report. Plaintiffs fail to articulate any basis for their claims other than the absence of an onging relationship. Accordingly, the Amended Complaint fails to allege that BANA lacked a permissible purpose to access Plaintiffs' credit reports.

Even if Plaintiffs adequately alleged that BANA lacked a legitimate purpose to access each Plaintiff's credit report, the Amended Complaint still fails to allege any facts entitling Plaintiffs to relief. Plaintiffs do not allege they suffered any actual damages—the only relief available for a negligent violation of the FCRA (*see* 15 U.S.C. § 1681o(a)—and fail to allege any facts to support any other relief under the willful violation provisions of the FCRA. Their claims must be dismissed. Moreover, the deficiencies in Plaintiffs' FCRA claims cannot be cured by further amendment and should therefore be dismissed with prejudice.

## II.    PROCEDURAL HISTORY

On September 26, 2013, Plaintiffs filed a Complaint asserting claims against BANA under the FCRA.  On November 18, 2013, BANA filed its Motion to Dismiss with supporting documentation pulled from the public records of Plaintiffs' bankruptcy and foreclosure lawsuits. *See* Dkt. 17-19.  Upon Plaintiffs' request for more time, on December 19, 2013 the parties filed a stipulation to extend Plaintiffs' period to respond to the motion to dismiss to January 24, 2014. One day later, without any notice, Plaintiffs filed the current Amended Complaint.  The only material difference between the Amended Complaint and its predecessor is the dismissal of the Gerlach and Prissel Plaintiffs' claims against BANA, which reduced the number of named Plaintiffs from seven to four.  The allegations of the Amended Complaint, which presumably take into account the arguments made in BANA's prior Motion to Dismiss, are otherwise substantively identical.  For the same reasons argued before, and as set forth below, the Amended Complaint fails to allege sufficient facts to support a FCRA claim against BANA and should be dismissed without leave to amend.

## III.    ALLEGATIONS AND FACTUAL BACKGROUND

### A.    PLAINTIFFS ALLEGE THAT THEY TERMINATED ANY RELATIONSHIP WITH BANA BEFORE THEIR CREDIT REPORTS WERE ACCESSED

Plaintiffs concede that they were BANA mortgage customers.  Am. Compl. ¶¶ 9 (Germain), 20 (Rhy), 24 (A. Middleton), and 30 (B. Middleton).  Between 2008 and 2009, each Plaintiff filed a Chapter 7 bankruptcy petition and listed BANA or its predecessor, Countrywide Home Loans, on their petition as a creditor.  *Id.*  Plaintiffs allege that their mortgage loans were discharged as a result of the bankruptcy actions.  *See* Am. Compl. ¶¶ 10, 20, 25, and 30.

Plaintiffs claim that after their bankruptcy proceedings, BANA accessed each of their credit reports, and that BANA lacked a permissible purpose to do so because the relationship

between BANA and Plaintiffs was terminated in bankruptcy.  *Id.* ¶¶ 11, 14, 17, 19, 21, 24, 26.

The Amended Complaint specifically alleges that "at no time subsequent to their Chapter 7

Bankruptcy discharges did any of the Plaintiffs ever have a relationship with Defendant of the

kind specificed under [the FCRA]."  *See id.* ¶ 36.  However, Plaintiff Germain concedes that he

contacted BANA *five times* following his bankruptcy to request a deed in lieu of foreclosure or

short sale from the Bank (*id.* ¶ 15)—each of which would permit BANA to inquire as to his

credit status—and the bankruptcy filings discussed below make clear that the other Plaintiffs

continued their relationships with BANA as well.

Plaintiffs do not allege they suffered actual damages as a result of BANA's alleged

conduct.  Instead, Plaintiffs seek statutory and punitive damages for willful violations of the

FCRA.  *See id.* ¶ 53.

B.     **PLAINTIFFS' BANKRUPTCY AND FORECLOSURE FILINGS SHOW THAT
       EACH PLAINTIFF HAD AN ONGOING RELATIONSHIP WITH BANA**

Although Plaintiffs contend that the relationship between Plaintiffs and BANA ended

during bankruptcy, the relevant public court filings tell a different story.[1]  In their Statements of

Intent filed in the bankruptcy actions, the Rhy and Middleton Plaintiffs elected to retain their

properties and continue to make payments to BANA:

- Amber Rhy: Elected to retain the property, and stated that "Ongoing Payments"
  will be made.  *See* Supplemental Declaration of Valerie Bailey-Rihn (hereinafter,
  "Supp. Bailey-Rihn Decl."), Exh. 2A.

- Angela Middleton: Property retained and debtors will "continue payments" on
  property.  *Id.*, Exh. 3A.

---

[1]  BANA requests that this Court take judicial notice of the court dockets and filings attached to the Supplemental
Declaration of Valerie Bailey-Rihn, filed concurrently with this Motion.  In deciding a motion to dismiss, a district
court may take judicial notice of matter of the public record such as court filings.  *Henson v. CSC Credit Servs.,* 29
F.3d 280, 284 (7th Cir. 1994).

- **Bruce Middleton**: Property retained and debtors will "continue payments" on property. *Id.*

At the time of his bankruptcy filing, Plaintiff Jon Germain did not file a Statement of Intent regarding the property mortgaged with BANA, but designated the property as subject to a foreclosure action. The Amended Complaint makes clear his ongoing contact with BANA:

- The Amended Complaint concedes that Germain was in communication with BANA, and contacted BANA five times following his bankruptcy to request a deed in lieu of foreclosure or short sale from the Bank. *See* Am. Compl. ¶¶ 14, 15.

After the bankruptcy proceedings, each of the named Plaintiffs remained in default. During the foreclosure proceedings that followed, Plaintiffs again attempted to remain in possession of the properties that secured BANA's debts and sought to continue making payments to BANA.

- **Jon Germain:** Filed numerous documents in defense of two foreclosure proceedings, spanning from 2007 to 2013, including asserting the affirmative defense that the foreclosure should be dismissed for failure to offer Germain loss mitigation prior to the foreclosure proceedings. Supp. Bailey-Rihn Decl., Exhs. 1B, 1C, 1D.

- **Amber Rhy:** Continues to contest the foreclosure proceedings, including a motion filed by Attorney Eric Crandall on November 4, 2013, to stay the court's order regarding the foreclosure instituted by Bank of America. *Id*. Exhs. 2B, 2C.

- **Angela and Bruce Middleton:** Continue to contest the five year long foreclosure proceedings instituted by Bank of America, including a motion to request a

- 4 -

pretrial scheduling conference on October 23, 2013 filed by Attorney Eric
Crandall. *Id*. Exhs. 3B, 3C.

Taken together, the bankruptcy and foreclosure filings clearly demonstrate that Plaintiffs
intended to and succeeded in continuing a relationship with BANA after the bankruptcy
proceedings.

## IV.   LEGAL STANDARD ON A MOTION TO DISMISS.

A motion to dismiss for failure to state a claim tests the legal sufficiency of a complaint.
Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, the plaintiff must allege facts sufficient
to demonstrate that its claim for relief is plausible on its face.  *Bell Atlantic Corp. v. Twombly*,
550 U.S. 54, 570 (2007); *see also Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013);
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  In reviewing the complaint, the Court must accept as
true all well-pleaded facts.  *Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008). The Court
need not accept legal conclusions or unsupported conclusions of fact, however, even when
pleaded as factual allegations.  *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2012).  Just as a
complaint must be dismissed if it fails to state a claim for relief, plaintiff can also "plead itself
out of court by pleading facts that establish an impenetrable defense to its claims."  *Tamayo v.
Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008). In addition, leave to amend a complaint
should be denied when amendment would be futile.  *CogniTest Corp. v. Riverside Pub. Co.,* 107
F.3d 493, 499 (7th Cir. 1997) (citing *McGee v. Kerr–Hickman Chrysler Plymouth, Inc.,* 93 F.3d
380, 385 (7th Cir.1996) (superceded on other grounds).

A district court "may also take judicial notice of matters of public record without
converting a 12(b)(6) motion into a motion for summary judgment."  *Henson v. CSC Credit
Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (district court properly considered public court
documents in deciding the defendants' motions to dismiss) (*citing United States v. Wood*, 925

- 5 -

F.2d 1580, 1582 (7th Cir. 1991)); *see also General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997) (matters of public record, such as the contents of court records, are judicially noticeable facts). The reason for allowing courts to consider such records is "to avoid unnecessary proceedings when an undisputed fact in the public record establishes that the plaintiff cannot satisfy the 12(b)(6) standard." *General Elec. Capital Corp.*, 128 F.3d at 1081. Here, the Amended Complaint and public records demonstrate that the plaintiffs cannot satisfy the 12(b)(6) standard.

## V.   LEGAL ARGUMENT

### A.   PLAINTIFFS FAIL TO ALLEGE THAT BANA LACKED A PERMISSIBLE PURPOSE FOR ACCESSING THE CREDIT REPORTS

Plaintiffs fail to allege facts showing that BANA lacked a permissible purpose to access Plaintiffs' credit reports under the FCRA.  *See* 15 U.S.C.§ 1681b(f).  The permissible purposes to obtain a consumer report under the FCRA include the following:

> A consumer reporting agency may furnish a consumer report . . .
>
> (3) to a person which it has reason to believe
>
> (A) intends to use the information in connection with a <u>credit transaction</u> involving the consumer . . . and involving . . . <u>review or collection of an account</u> of the consumer . . . or
>
> (F) otherwise <u>has a legitimate business</u> need for the information…
>
> (i) in connection with a <u>business transaction</u> that is initiated by the consumer.

15 U.S.C. § 1681b(a) (emphasis added).

Here, the record clearly establishes that each Plaintiff had an ongoing business relationship with BANA.  Each Plaintiff held a mortgage loan with BANA prior to bankruptcy.  And while Plaintiffs allege that the creditor/debtor relationship was ended in bankruptcy, the public records clearly demonstrate that is not the case.  The records show that the relationship

between Plaintiffs and BANA continued after the bankruptcy proceedings—because that is what *Plaintiffs wanted*.

Plaintiff Jon Germain sought workout relief in a subsequent foreclosure action. He allegedly contacted BANA five times following his bankruptcy to request a deed in lieu of foreclosure and posted two short sale requests on BANA's website. Am. Compl. ¶ 15.  In her bankruptcy proceedings, Plaintiff Amber Rhy never wished to terminate her debtor relationship with BANA.  Instead, she elected to retain the property and continue to make payments.  Supp. Bailey-Rihn Decl. Exh. 2A.  In court-filed documents, Angela Middleton and Bruce Middleton expressly elected to continue making payments and retain the property.  *Id.,* Exh. 3A.  In addition, Plaintiffs admit that Angela and Bruce Middleton had attempted some loan modification or workout programs with BANA.  Am. Compl. ¶¶ 28, 33.

These are not the actions of customers whose accounts/transactions/relationships have been terminated.  Indeed, the continuing interactions between Plaintiffs and BANA demonstrate the ongoing account/transactions/relationship between Plaintiffs and BANA called for by § 1681b(a)(3).

B.     **PLAINTIFFS' RELIANCE ON *GODBY* IS IMPROPER HERE**

Plaintiffs' sole basis for their assertion that BANA improperly accessed their credit reports appears to be *Godby v. Wells Fargo Bank, N.A.*, 599 F. Supp. 2d 934 (S.D. Ohio 2008). Plaintiffs cite *Godby* for the proposition that once a Chapter 7 discharge is received, the mortgage debt is extinguished and, consequently no creditor/debtor relationship remains which could permit the mortgage holder to pull a credit report.  Am. Compl. ¶ 42. *Godby* is clearly distinguishable.

1.     ***Godby* is factually distinguishable and does not apply**

In *Godby*, the Plaintiff filed a Chapter 7 bankruptcy Statement of Intention to surrender

the real property that was mortgaged with the creditor.  *Godby*, 599 F. Supp. 2d at 935. She also moved out of the property. *Id.*  Focused on this fact, the Court concluded that "as a practical matter, the parties did not have an existing relationship" because the plaintiff had "surrendered her rights to the property" and, as such, there was no permissible purpose for obtaining a credit report.  *Id*. at 942.

Unlike in *Godby*, Plaintiffs here elected to continue making payments on the mortgage loans secured by their properties, and at various stages both during and after bankruptcy they sought to remain in their homes and continue their relationships with BANA.  Plaintiff Germain concedes he sought relief to avoid foreclosure, and the remaining three Plaintiffs elected to continue making monthly mortgage payments to BANA.  *See* Supp. Bailey-Rihn Decl., Exhs. 1A, 1B, 2A, 3A.  Plaintiffs and BANA were engaged in foreclosure proceedings between the years 2008 to 2013.  *See id.*, Exhs. 1B, 1C, 1D, 2B, 2C, 3B, 3C.  In the foreclosure proceedings, Plaintiff Jon Germain continued his attempts to retain the property by asserting the affirmative defense that BANA had failed "to offer [him] loss mitigation prior to initiating foreclosure proceedings."  *See id.*, Exhs. 1D at 4.  All four of the Plaintiffs made extensive filings in the foreclosure proceedings, vigorously defending the foreclosure actions and seeking to remain in the properties by means of loan modifications or other loan workout relief.  *See id.*, Exhs. 1B, 1C, 1D, 2B, 2C, 3B, 3C.  Thus, the public record demonstrates Plaintiffs fought to maintain a relationship with BANA.

### 2. **BANA's liens and the Plaintiffs' obligations were not extinguished until the foreclosure actions were completed even if plaintiffs' personal obligations were discharged.**

To apply the *Godby* case to these circumstances would also ignore the nature of the relationship that continues to exist between lender and borrower throughout the foreclosure process.  In *Dewsnup v. Timm*, 502 U.S. 410, 418 (1992), the United States Supreme Court held

that a creditor's lien stays with the real property until foreclosure despite the debtor's bankruptcy filing.  Thus, the only thing that is discharged after a Chapter 7 discharge is the personal liability of the debtor, not the debt.  *See In re Shondel*, 950 F.2d 1301, 1306 (7th Cir. 1991).  Section 524(a) provides that "a discharge operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any such debt as a personal liability of the debtor . . . ."  *Id*.  On its face, the discharge provision prevents suits and renders judgments void only with respect to the "personal liability" of the debtor.  It does not preclude a determination of the debtor's liability on the basis of which indemnification would be owed by any other party.  *Id*.

It is black letter law that a mortgage that survives a Chapter 7 discharge is still a claim or a debt regardless of whether the personal liability has been discharged. *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991).  Even after the debtor's personal obligations have been extinguished, the mortgage holder still retains a "right to payment" in the form of its right to the proceeds from the sale of the debtor's property.  *Id*.  Alternatively, the creditor's surviving right to foreclose on the mortgage can be viewed as a "right to an equitable remedy" for the debtor's default under the underlying obligation.  *Id*.  Either way, there can be no doubt that the surviving mortgage interest corresponds to an "enforceable obligation" of the debtor.  *Id*.  Under Wisconsin law, it is only after the foreclosure sale is confirmed that the underlying obligation is satisfied. *Harvest Savings Bank v. ROI Investments*, 209 Wis. 2d 586, 563 N.W.2d 579 (Ct. App. 1997).

Moreover, the Plaintiffs in this case had a right under Wisconsin law to redeem the property after the foreclosure judgment is entered and before the sheriff's sale of the property. Wis. Stat. § 846.13.  However, the amount that the Plaintiffs could redeem the property for is the

total amount of the debt, not the value of the property at the time of the discharge.  *Hobl v. Lord*, 162 Wis. 2d 226, 241, 470 N.W.2d 265 (1991). In *Hobl*, the debtor had filed a Chapter 7 bankruptcy and received a discharge. *Id*. at 231.  The debtor then attempted to redeem the value of its property after the foreclosure judgment at the fair market value of the property at the time of the bankruptcy, arguing that the unsecured portion of the lien was void under Bankruptcy Code § 506.  *Id*.  The Wisconsin Supreme Court rejected that argument and provided that the mortgagor may only redeem mortgaged property for the amount of the foreclosure judgment plus interest, costs and taxes.  *Id*. at 241.  Similarly, a person has a right to any surplus obtained at the foreclosure sale to the extent it existed, regardless of whether their debt had been discharged in bankruptcy, but it would be any surplus over the contractual amount owned not the value of the property as of the time of the bankruptcy.  Wis. Stat. § 846.142.  Thus under Wisconsin law, the debt is not extinguished until after the foreclosure sale is confirmed, only the personal liability.

As such, BANA continued to have a relationship with each of the Plaintiffs that would support a permissible purpose to pull their credit reports.  It is the Plaintiffs' burden to allege facts that suggest an impermissible purpose and they have not done so.

### 3.   *Godby* is contrary to the actual language of the FCRA.

Even if *Godby* were otherwise applicable here, it is wrongly decided to the extent it holds that only active "current accounts" can be reviewed or collected upon and therefore, once an account is closed or the consumer receives a discharge, no account review can take place.  *Godby* 599 F.Supp.2d at 942.

The *Godby* court recognized that there is a split in decisions as to whether the FCRA imposed restrictions on when, in the lending relationship, creditors can pull credit reports.  *See id*. at 938-39.  The relevant provisions permitting credit pulls only require the inquiring party to have 1) an intent to use the information, 2) in connection with a credit transaction, 3) to review

the account or a 1) legitimate business need 2) in connection with a transaction initiated by the consumer.  15 U.S.C. 1681b(a)(3)(A) & (3)(F).  Indeed, the language of the FCRA does not put a temporal limitation on the term "account."  *See Wilting v. Progressive County Mutual Ins. Co.*, 227 F.3d 474, 476 (5th Cir. 2000) (neither the Act nor the FTC commentary on the Act suggests that a report may only be permissibly obtained during particular points in the party's relationship, rejecting the argument that only existing accounts can be obtained).  Thus, if the statutory elements are met, a creditor has a permissible purpose to obtain a credit report regardless of whether the account is open or closed.

Numerous other courts have confirmed that the statute should be read in this way.  In *Levine v. World Financial Network Nat. Bank*, 554 F.3d 1314 (11th Cir. 2009), the Eleventh Circuit held that it was objectively reasonable to interpret FCRA's "permissible purposes" to include obtaining reports for closed accounts.  *Levine*, 554 F.3d at 1318-1319. Similarly, in *Huertas v. Galaxy Asset Management*, 641 F.3d 28, 32 (3rd. Cir. 2011), the Court held that an obligation was not extinguished by the expiration of the six year statute of limitation even though the debt was ultimately unenforceable.  Therefore, a debt collector did not violate the FCRA for obtaining a consumer's credit report on a stale account. *Id.* at 34.

In *Shlahtichman v. 1-800 Contacts, Inc.,* 615 F.3d 794, 802 (7th Cir. 2010), the Seventh Circuit stated that it could not ignore the unambiguous language of the FCRA statute in furthering the purposes of the statute.  And other courts have held that the FCRA's plain languuage allows the furnishing of a credit report even where the account has closed or the debt is no longer enforceable. *See Banga v. Experian Information Solutions, Inc*., No. C-09-04867, 2013 WL 5539690 at * 2 (N.D. Cal. 2013), citing *Levine v. World Financial*, *Supra*, 554 F.3d at 1318-1319.

In all of these cases, courts have held that once a credit relationship exists, a creditor can pull a credit report if it demonstrates that the report is obtained to review an account even if the debt was paid or not ultimately collectable.  Therefore, the *Godby* court erred when it determined that only active "current accounts" can be reviewed or collected upon and that, once an account is closed or the consumer receives a discharge, no account review can take place.  *Godby* is therefore inconsistent with the plain language of the FCRA.

C.     **PLAINTIFFS DO NOT ALLEGE ANY RECOVERABLE DAMAGES AS A BASIS FOR A NEGLIGENT VIOLATION AND FAIL TO ALLEGE FACTS TO SUPPORT A WILLFUL VIOLATION TO RECOVER THE STATUTORY DAMAGES THEY SEEK**

Even if Plaintiffs had sufficiently alleged a violation of the FCRA, the Amended Complaint should be dismissed because Plaintiffs have failed to allege facts that would allow them to recover for either a willful or negligent violation of the Act.

Plaintiffs do not allege, or claim, actual damages.  Instead, they seek only statutory damages.  Am. Compl. ¶¶ 48, 60.  Because Plaintiffs do not allege actual damages, they assert no basis for recovery for a negligent violation of the FCRA. 15 U.S.C. § 1681n(o).  To be entitled to the statutory damages they do seek, therefore, Plaintiffs must demonstrate a willful violation of the FCRA.  *See* 15 U.S.C. § 1681n(a).  Because Plaintiffs fail to allege facts that would support the conclusion that the alleged violations were willful, Plaintiffs Amended Complaint must be dismissed.

In *Safeco Insurance Company of America v. Burr*, 551 U.S. 47, 57-60 (2007), the Supreme Court established that the standard for willfulness requires a showing of more than mere carelessness and at least reckless disregard.  Further, the Court held that "a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of

- 12 -

violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69 (2007). The Court found that the creditor's conduct was objectively reasonable and not a reckless violation due to the "less-than-pellucid" FCRA text and a lack of guidance from a Court of Appeals or the Federal Trade Commission. *Id.* at 70. Therefore, even if a defendant violates FCRA, it cannot be considered a reckless violation as long as the action was not directly contrary to the text of FCRA and there was no contrary guidance from a Court of Appeals or the Federal Trade Commission. *Id.*

Here, Plaintiffs allege no facts establishing that BANA's alleged violation of the FCRA was reckless. According to Plaintiffs, the only ground for a finding of willfulness is that BANA should have been aware of the *Godby* case. As set forth above, however, *Godby* is factually distinguishable from the case at hand and contrary to the prevailing interpretation of the FCRA. In light of the records clearly show a continuing relationship between Plaintiffs and BANA, and the absence of any applicable "contrary" guidance from the courts, there are no facts which would justify a finding that BANA willfully violated FCRA.

D. **THERE IS NO SHOWING THAT FURTHER LEAVE TO AMEND CAN CURE THE DEFECTS OF THE AMENDED COMPLAINT AND THE CLAIMS SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND**

The Seventh Circuit has held that leave to amend should be denied when amendment would be futile. *CogniTest Corp. v. Riverside Pub. Co.*, 107 F.3d 493, 499 (7th Cir. 1997) (citing *McGee v. Kerr–Hickman Chrysler Plymouth, Inc.*, 93 F.3d 380, 385 (7th Cir.1996)); *see also J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 935 F.2d 815, 819 (7th Cir. 1991) (affirming denial of leave to amend when Plaintiff's amended complaint failed to remedy the deficiencies of Plaintiff's earlier attempts to state a claim). Because Plaintiffs are unable to cure the deficiencies in their pleadings, the conditions set forth by the Seventh Circuit are present in this case and Plaintiffs should not be allowed to amend their complaint a second time.

- 13 -

Before filing their Amended Complaint, Plaintiffs were able to review Defendant's Motion to Dismiss.  Therefore, having notice of the weaknesses in their argument, the Amended Complaint represents Plaintiffs' best attempt at presenting their allegations against Defendant. Plaintiffs made no substantive change in the allegations.  If anything, the allegations pertaining to Plaintiff Germain indicate that he had an ongoing relationship with BANA.  Therefore, there is no indication that further amendment will cure the defects.  As such, BANA's Motion to Dismiss should be granted without leave to amend.

## VI.    CONCLUSION

For the above reasons, the Defendant respectfully request that its motion to dismiss be granted without leave to amend.

Dated January 8, 2014                          Valerie L. Bailey-Rihn
                                               State Bar No. 1000728
                                               Rachel A. Graham
                                               State Bar No. 1069214

                                               /s/ Valerie L. Bailey-Rihn
                                               QUARLES & BRADY LLP
                                               33 East Main Street
                                               Suite 900
                                               Madison, WI  53703
                                               608.251.5000
                                               val.bailey@quarles.com
                                               rachel.graham@quarles.com

                                               David S. Reidy
                                               Marc Lackner
                                               Reed Smith LLP
                                               101 Second Street, Suite 1800
                                               San Francisco CA94105
                                               415.659.5933
                                               dreidy@reedsmith.com

                                               *Attorneys for Defendant, Bank of America, N.A.*

- 14 -