UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JON GERMAIN et. al, | |
| Plaintiff, | |
| v. | |
| BANK OF AMERICA, N.A., | Case No. 13-CV-00676 |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF
DEFENDANT BANK OF AMERICA, N.A.'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ................................................................................................. 3

  A.  PLAINTIFF JON GERMAIN RESISTED FORECLOSURE POST-BANKRUPTCY AND MADE INCONSISTENT REPRESENTATIONS TO BANA REGARDING HIS INTEREST IN RELINQUISHING THE PROPERTY. ....................................... 3

  B.  PLAINTIFF AMBER RHY RETAINED HER PROPERTY AFTER BANKRUPTCY AND CONTINUED TO FIGHT FORECLOSURE—AND RENTED THE PROPERTY TO A TENANT—UP TO THE FILING OF THIS LAWSUIT. ........................................ 6

III.  LEGAL STANDARD ......................................................................................... 7

IV.  LEGAL ARGUMENT ........................................................................................ 8

  A.  PLAINTIFFS CANNOT ESTABLISH THAT BANA'S ACCOUNT REVIEW INQUIRIES VIOLATED THE FCRA .................................................................. 8

    1.  BANA Held an Interest in the Secured Properties and Had a Legitimate Business Need to Conduct Account Reviews of Plaintiffs' Mortgage Loans ............................. 9

    2.  The FCRA Does Not Preclude Review of a Mortgage Loan Account Where the Mortgage Lien Remains in Place ...................................................... 11

    3.  *Godby* and *Ocwen* do not Prohibit Account Review Inquiries on Active Mortgage Accounts Post-Bankruptcy ........................................................... 12

  B.  EVEN IF BANA VIOLATED THE FCRA, PLAINTIFFS CANNOT ESTABLISH A WILLFUL VIOLATION BECAUSE BANA DID NOT ACT IN RECKLESS DISREGARD OF THE FCRA ........................................................................... 14

    1.  BANA's Actions Were Based on a Reasonable Reading of the FCRA ...................... 15

    2.  BANA's Account Review Conduct Did Not Contravene Any Authority from the FTC or Courts Of Appeals Interpreting the FCRA .............................................. 15

  C.  THIS COURT HAS CONSISTENTLY GRANTED MOTIONS FOR SUMMARY JUDGMENT UNDER SIMILAR CIRCUMSTANCES ............................................... 16

V.  CONCLUSION ................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Bank Leuni Le-Israel, B.M. v. Lee*,
  928 F.2d 232 (7th Cir. 1991) ................................................................. 7

*Barton v. Ocwen Loan Servicing LLC*,
  2012 WL 4449860 (D. Minn., 2012) .............................................. 12, 13

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)............................................................................. 7

*Dewsnup v. Timm*,
  502 U.S. 410 (1992)........................................................................... 11

*Doe v. Saftig*,
  2011 WL 1792967 (E.D. Wis. 2011) ..................................................... 8

*Edward C. Anderson v. TransUnion*,
  405 F. Supp. 2d 997 (W.D. Wis. 2005) ........................................... 8, 13

*Godby v. Wells Fargo Bank, N.A.*,
  599 F. Supp. 2d 934 (S.D. Ohio, 2008) .............................................. 12

*Grant v. RJM Acquisitions Funding, LLC*,
  11 C 8851, 2013 WL 3071249 (N.D. Ill. 2013)............................... 10, 11

*Indiana Grocery, Inc. v. Super Valu Stores, Inc.*,
  864 F.2d 1409 (7th Cir. 1989) .............................................................. 7

*Ippolito v. WNS*,
  864 F.2d 440 (7th Cir.1988) ........................................................... 9, 10

*Johnson v. Home State Bank*,
  501 U.S. 78, 84 (1991)....................................................................... 11

*Korotki v. Attorney Servs. Corp. Inc.*,
  931 F. Supp. 1269 (D.Md. 1996) ........................................................ 11

*Kronstedt v. Equifax*,
  No. 01-C-0052-C, 2001 WL 34124783 (W.D. Wis. Dec. 14, 2001).......... 8

*Levine v. World Financial Network National Bank*,
  554 F.3d 1314 (11th Cir. 2009) ..................................................... 11, 15

*Matsushita Electric Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)............................................................................. 7

*McFarland v. Bob Saks Toyota, Inc.*,
  466 F. Supp. 2d 855 (E.D.Mich. 2006).................................................. 8

*McKeown v. Sear Roebuck & Co.*,
  335 F. Supp. 2d 917 (W.D. Wis. 2004) ............................................... 16

*Minter v. AAA Cook Cnty. Consolidation, Inc.*,
  02 C 8698, 2004 WL 1630781 (N.D. Ill. 2004)..................................... 10

*Penny Lee Anderson v. TransUnion, LLC*,
   345 F. Supp. 2d 963 (W.D. Wis. 2004) ........................................................................ 8, 16, 17

*Pinner v. Schmidt*,
   805 F.2d 1258 (5th Cir. 1986) .................................................................................. 16

*Robinson v. Greystone Alliance, LLC*,
   No. BPG-10-3658, 2011 WL 2601573 (D. Md. June 29, 2011) ............................................ 11

*Safeco Ins. Co. of America v. Burr*,
   551 U.S. 47 (2007)...................................................................................................... 2, 14

*Scheel-Baggs v. Bank of America*,
   575 F. Supp. 2d 1031 (W.D. Wis. 2008) ................................................................................ 16

*Wilting v. Progressive Cnty. Mut. Ins. Co.*,
   227 F.3d 474 (5th Cir. 2000) .................................................................................. 15

**Statutes**

15 U.S.C. § 1681b(a)(3)(A) ........................................................................................ 2, 9, 11, 12

15 U.S.C. § 1681b(a)(3)(A) – (F) ........................................................................................ 10

15 U.S.C. § 1681b(a)(3)(E)........................................................................................ 2, 9, 11

15 U.S.C. § 1681b(a)(3)(F)........................................................................................ 2, 9, 10

15 U.S.C. § 1681n ........................................................................................................ 1, 14

15 U.S.C. § 1681n(a) ........................................................................................................ 16

**Rules**

Fed.R.Civ.P. 56(c) ........................................................................................................ 8

Fed.R.Civ.P. 56(e) ........................................................................................................ 8

## I.      INTRODUCTION

Plaintiffs Jon Germain and Amber Rhy bring this action against Bank of America, N.A. ("BANA") for violations of the Fair Credit Reporting Act (the "FCRA") based on BANA's account review inquiries, or "soft pulls" of Plaintiffs' credit information. Account review inquiries allow a creditor to review customer information without disclosing to any third party that the review has occurred. In other words, while "hard" pulls can be seen by other creditors—and can impact a consumer's score—account review inquiries have *no impact on the consumer.* Plaintiffs concede that they suffered no actual damages as a result of the account review inquiries at issue here. Instead, Plaintiffs seek only statutory damages.  As a result, Plaintiffs must demonstrate that the alleged violations of the FCRA were willful.  *See* 15 U.S.C. § 1681n.  Because Plaintiffs cannot establish that the soft pulls in question violate the FCRA, much less constitute *willful* violations of the statute, BANA's Motion for Summary Judgment should be granted.

Plaintiffs are both BANA mortgage customers who obtained a discharge of their personal liability for their mortgage debt in Chapter 7 bankruptcy. Plaintiffs contend that the discharge of personal liability alone ended their relationship with BANA so that BANA lacked any permissible purpose for the subsequent soft pull reviews of their credit information, thereby violating the FCRA.   However, the facts are undisputed that Plaintiffs' discharges did not end their respective account relationships with BANA; BANA still held a lien on each of Plaintiffs' properties, and was entitled to enforce those liens to satisfy the underlying loan obligations. Moreover, rather than relinquishing or abandoning the properties, both Plaintiffs evidenced a continuing interest in retaining the properties. Plaintiff Rhy informed the bankruptcy court that she intended to make ongoing payments to BANA in order to keep her home and delayed resolution of the debt by contesting the foreclosure. Similarly, Plaintiff Germain continued to contact BANA

1

regarding loss mitigation options and contested foreclosure on the grounds that BANA had not done enough to pursue loss mitigation efforts with him.

The permissible purposes to access a customer's credit information under the FCRA are broadly construed in favor of such account reviews where the customer relationship continues, as it did as with these Plaintiffs. The FCRA broadly permits credit review inquiries for "review or collection of an account," to assess an existing credit obligation, or to further an otherwise legitimate business need. *See* 15 U.S.C. § 1681b(a)(3)(A), (E), (F). Under these provisions, BANA acted lawfully when it reviewed credit information pertaining to Plaintiffs' accounts for various loan modification and loss mitigation programs and to manage its account portfolio.

Even if this Court disagrees that BANA acted lawfully, the inquiry does not end there. In order to prevail, Plaintiffs must demonstrate that BANA *willfully* violated the statute. As such, Plaintiffs must prove by an objective standard that BANA acted with reckless disregard of their rights. A violation of the FCRA is not reckless if the action was based on a reasonable reading of the statute and there was no contrary authoritative guidance from either the Court of Appeals or the Federal Trade Commission ("FTC"). *See Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 70 (2007). Plaintiffs can point to no such Court of Appeals or FTC opinion or, indeed, to any objective reading of the statute barring BANA's conduct, which fell within the broad parameters of the FCRA. In short, there is simply no reasonable basis for a finding that BANA willfully violated the FCRA.

This Court has repeatedly rejected efforts to turn the FCRA into a strict liability statute that treats every potential violation as a willful violation, and it has dismissed willfulness claims where no evidence existed that the defendant deliberately violated the law. The lack of evidence of willfulness compels the same result here.

## II.      BACKGROUND

**A.      PLAINTIFF JON GERMAIN RESISTED FORECLOSURE POST-BANKRUPTCY AND MADE INCONSISTENT REPRESENTATIONS TO BANA REGARDING HIS INTEREST IN RELINQUISHING THE PROPERTY.**

In December 2004, Plaintiff Jon Germain financed the purchase of a residential property in Dresser, Wisconsin.  Defendant BANA's Proposed Findings of Fact in Support of Its Motion for Summary Judgment ("PFF") at ¶ 5.  At that time, Plaintiff Germain applied for a loan with the representation that he intended to reside in the property.  PFF at ¶ 6. Approximately one year later, in 2005, Plaintiff Germain made the last regular payment on his loan.  PFF at ¶ 7.

On August 3, 2007, the servicer on the loan initiated foreclosure proceedings.  PFF at ¶ 9.  On October 27, 2008, before the foreclosure action was completed, Germain filed a Chapter 7 bankruptcy petition in the United States District Court for the Western District of Wisconsin, Case No. 1-08-15674-tsu.  PFF at ¶ 10.

On February 19, 2009, Plaintiff Germain received a Chapter 7 discharge of his personal liability for the mortgage debt to BANA. PFF at ¶ 11.

On September 24, 2010, the foreclosure action was reopened. PFF at ¶ 12.  Due to a transfer of servicing to BANA, the action was dismissed in December 2010. *Id.*

On January 1, 2012, BANA conducted an account review inquiry of Plaintiff Germain's TransUnion credit information.[1]  PFF at ¶ 13.  The account review inquiry was

---

[1] The account reviews at issue in this case were "soft pulls" of Plaintiffs' credit information, which cannot be viewed by third parties and are not listed under the "Regular Inquiry" category on a consumer's credit report. As shown on Plaintiff Germain's TransUnion credit reports, an account review inquiry indicates that a creditor "obtained information from your credit file in connection with an account review or other business transaction with you.  These inquiries are not seen by anyone but you and will not be used in scoring your credit file […]."  PFF at ¶ 4.  Accordingly, the inquiries had no effect on Plaintiffs' respective credit scores or upon any decision regarding their ability to obtain credit.

conducted in connection with BANA's efforts to obtain publicly available information on customers holding an Adjustable Rate Mortgage ("ARM"), including the mortgage origination date, the rate change frequency, and loan-to-value ratio.  PFF at ¶ ¶ 14, 15.[2] These actions are consistent with the Office of the Comptroller of the Currency's ("OCC") directive to national banks to assess the risk associated with interest rate resets.  The OCC directs banks as follows: "If the bank has substantial volumes of adjustable-rate mortgage products and other loans with explicit caps, evaluate the effect of those caps on the bank's future earning and at what level of interest rates those caps would come into effect. […] Assess how a substantial increase in interest rates would affect the credit performance of the bank's loan portfolio."  *See* Comptroller's Handbook, *Interest Rate Risk*, Comptroller of the Currency Administrator of National Banks ("*Interest Rate Risk*"), at 22.[3]

Specifically, the OCC directs national banks to collect information on ARMs from various sources.  *Id.* at 25.  It directs banks with significant holdings of ARMS to determine if "[d]ata on periodic and lifetime caps is captured in sufficient detail," "[t]he effect of teaser rates as well as the type of rate indices used" and "[d]ata permits the bank to monitor the prepayment, default, and extension risks of the products."  *Id.*  It directs banks "[t]o obtain the detailed information necessary to measure interest rate risk, banks need to be able to tap or "extract" data from numerous and diverse transaction systems . . ." *Id.* at 12.

On March 7, 8, and 9, 2012, BANA submitted account review inquiries to TransUnion on Plaintiff Germain's account, this time to obtain updated FICO scores that

---

[2] This encompassed a review of BANA and non-BANA ARM loans because management of portfolio risk required BANA to have an understanding of the interest rates not only for BANA serviced loans but also imminent interest rate adjustments on non-BANA mortgages.

[3] *Interest Rate Risk* is available at http://www.occ.gov/publications/publications-by-type/comptrollers-handbook/irr.pdf.  For the Court's convenience, it is also highlighted and attached as Exhibit 1 to this Memorandum.  The Court can take judicial notice of its contents.  *U.S. ex rel. J. Camillo v. Ancilla Sys., Inc.,* No. 03-CV-0024-DRH, 2005 WL 1926559 at *3 n. 5 (S.D. Ill. 2005).

4

would allow BANA to review Germain's eligibility in the federally mandated Home Affordable Modification Program ("HAMP") and Making Homes Affordable Program ("MHA").   PFF at ¶ ¶ 16, 17.   These programs were regulated by the United States Department of the Treasury, whose directives required mortgage servicers like BANA to proactively solicit all borrowers whose mortgage loans are potentially eligible for HAMP. Supplemental Directive 10-02, *Home Affordable Modification Program – Borrower Outreach and Communication*, The United States Treasury Department, March 24, 2010 ("Supp. Directive 10-02").[4] Supp. Directive 10-02 provides as follows: "Servicers must pre-screen all first lien mortgage loans where two or more payments are due and unpaid to determine if they meet the basic criteria for consideration under HAMP." *Id.* at 2.   It specifically states that "[b]orrowers who have received a Chapter 7 bankruptcy discharge in a case involving the first lien mortgage who did not reaffirm the mortgage debt under applicable law are eligible for HAMP." *Id.* at 8.

On March 14, 2012, BANA instituted foreclosure proceedings against Plaintiff. PFF at ¶ 18.   Rather than acquiescing in the foreclosure, Germain contested it.   In his Answer to the foreclosure complaint, Plaintiff Germain asserted that "[BANA's] claims should be dismissed for [BANA's] failure to exhaust administrative remedies, including but not limited to [BANA's] failure to offer [Plaintiff Germain] loss mitigation prior to initiating foreclosure proceedings."  PFF at ¶ 19.

Shortly thereafter, Plaintiff Germain pursued such a loss mitigation alternative to foreclosure by submitting a Deed in Lieu of Foreclosure proposal.  PFF at ¶ 20. BANA then conducted an account review inquiry on March 26, 2012 to determine Plaintiff Germain's eligibility for a variety of loss mitigation programs. PFF at ¶ 21.   In so doing,

---

[4]  Supp. Directive 10-02 is available on the Home Affordable Modification Program website at https://www.hmpadmin.com/portal/index.jsp, and for the Court's convenience, it is attached as Exhibit 2 to this Memorandum.  The Court can take judicial notice of its contents.  *Camillo*, 2005 WL 1926559 at *3 n. 5.

BANA was acting in a manner consistent with Department of Treasury supplemental directives that encourage mortgage loan servicers to communicate all options available to the homeowner and the actions the homeowner must take to be considered for these options. *See* Exhibit 2.

On May 2, 2012, BANA sent a letter to Germain denying the Deed in Lieu request because Germain had indicated that he no longer wanted to pursue the Deed in Lieu. PFF at ¶ 22.

On September 17, 2012, Germain and BANA were ordered to mediation to resolve the foreclosure, which both parties attended. PFF at ¶ 23. On November 29, 2012, with Germain once again pursuing alternatives to foreclosure, BANA conducted another soft pull account review inquiry. PFF at ¶ 24.

On December 26, 2012, Plaintiff Germain again submitted a request for a Deed in Lieu of Foreclosure.  PFF at ¶ 25.  On April 9, 2013, the second request for a Deed in Lieu of Foreclosure was completed and the property transferred to BANA.  PFF at ¶ 26.  The soft pulls at issue in Germain's claims all occurred before title to the Germain property passed to BANA.

**B.**      **PLAINTIFF AMBER RHY RETAINED HER PROPERTY AFTER BANKRUPTCY AND CONTINUED TO FIGHT FORECLOSURE—AND RENTED THE PROPERTY TO A TENANT—UP TO THE FILING OF THIS LAWSUIT.**

On October 30, 2009, after falling behind on her mortgage payments, Plaintiff Rhy filed a Chapter 7 bankruptcy petition in the United States District Court for the Western District of Wisconsin, Case No. 09-17434. PFF at ¶ 30.  In her bankruptcy petition, instead of reaffirming the debt or surrendering the property, Plaintiff Rhy indicated that she intended to "retain" the property and make "Ongoing Payments."  PFF at ¶ 31.

On February 18, 2010, Plaintiff Rhy received a Chapter 7 discharge of personal liability.  PFF at ¶ 32.

On March 22, 2010, BANA moved to reopen the foreclosure proceeding that had been stayed during bankruptcy.  PFF at ¶ 33.  Plaintiff Rhy contested the foreclosure, stating that BANA did not have standing to foreclose.  PFF at ¶ 34.  On April 20, 2010, BANA was granted summary judgment on the issue of standing.  PFF at ¶ 35.  After a sheriff's sale was noticed on October 19, 2012, Plaintiff Rhy filed a motion to reopen the foreclosure action and further stayed the sale of her property.  PFF at ¶ 36.  Plaintiff Rhy continued to reside at the property until November 2012.  PFF at ¶ 37.

On January 1, 2012, during Rhy's contested foreclosure action, BANA submitted an account review inquiry to TransUnion on Plaintiff Rhy's account.  PFF at ¶ 38.  As with Germain, this January 1 account review inquiry was conducted in connection with a process to obtain publicly available information on customers who held an ARM loan. PFF at ¶ 39.

Plaintiff Rhy continued to appeal the foreclosure until May 29, 2014, when her appeal was denied.  PFF at ¶ 40.  As of this filing, possession of the property has not been transferred to BANA, and Rhy is renting out the property.  PFF at ¶ 41.

## III.    LEGAL STANDARD

To prevail on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Indiana Grocery, Inc. v. Super Valu Stores, Inc.,* 864 F.2d 1409, 1412 (7th Cir. 1989).  When the moving party succeeds in showing the absence of a genuine issue as to any material fact, the opposing party must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Matsushita Electric Indus. Co. v. Zenith*

7

*Radio Corp.*, 475 U.S. 574, 586 (1986); *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991).  The opposing party cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories, or admission that establish that there is a genuine issue for trial.  *Celotex*, 477 U.S. at 324.

Whether conduct constitutes a willful violation of the FCRA is an issue that can be decided on a motion for summary judgment, as this Court has done.  *See, e.g., Penny Lee Anderson v. Trans Union, LLC*, 345 F. Supp. 2d 963 (W.D. Wis. 2004) (Crabb, J.) (granting defendant's motion for summary judgment where plaintiff failed to identify any act by defendant that could be characterized as comparable to willful concealment or misrepresentation).  Absent evidence that a defendant recklesslessly violated the FCRA, a willfulness claim under the statute cannot survive summary judgment.  *See, e.g., Edward C. Anderson v. Trans Union*, 405 F. Supp. 2d 977 (W.D. Wis. 2005) (Crabb, C.J.) (granting motion for summary judgment where plaintiff failed to provide evidence upon which a reasonable jury could find that defendant's procedures were unreasonable); *Kronstedt v. Equifax*, No. 01-C-0052-C, 2001 WL 34124783, *14 (W.D. Wis. Dec. 14, 2001) (Crabb, J.) (same).

## IV.      LEGAL ARGUMENT

## A.      PLAINTIFFS CANNOT ESTABLISH THAT BANA'S ACCOUNT REVIEW INQUIRIES VIOLATED THE FCRA

To maintain a claim for improper use or acquisition of a credit report under the FCRA, the plaintiff must show (a) that the defendant used or obtained (b) a credit report, as defined within the statute, (c) without a permissible statutory purpose.  *Doe v. Saftig*, No. 09-C-1176, 2011 WL  1792967, *7 (E.D. Wis. May 11, 2011) (*citing McFarland v. Bob Saks Toyota, Inc.*, 466 F. Supp. 2d 855, 867 (E.D. Mich. 2006)).

8

Under the FCRA, a consumer reporting agency has a permissible purpose furnish a consumer report to a person it has reason to believe:

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;

[. . .]

(E) intends to use the information, […] in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or

(F) otherwise has a legitimate business need for the information –

(i) in connection with a business transaction that is initiated by the consumer; or

(ii) to review an account to determine whether the consumer continues to meet the terms of the account.

15 U.S.C. § 1681b(a)(3)(A), (E), (F) (emphasis added).  BANA's account review inquiries were proper under each of the provisions listed above.  Indeed, contrary to Plaintiffs' theory, none of the permissible purposes in the FCRA distinguish between pre- and post-bankrupcty mortgage debt.

> **1.**   **BANA Held an Interest in the Secured Properties and Had a Legitimate Business Need to Conduct Account Reviews of Plaintiffs' Mortgage Loans**

Plaintiffs contend that "[a]t no time subsequent to their Chapter 7 Bankruptcy discharges did any of the Plaintiffs ever have a relationship with Defendant of the kind specified under 15 U.S.C. § 1681b(a)(3)(A) – (F)." Am. Compl. ¶ 36.  This is simply

wrong, both as a matter of the specific facts applicable to these two Plaintiffs and the law applicable to those facts.

The Seventh Circuit Court of Appeals has held that the question of whether a consumer report was obtained for a permissible purpose in connection with a legitimate business need, as permitted under Section 1681b(a)(3)(F), should be broadly construed. *See Ippolito v. WNS, Inc.*, 864 F.2d 440, 451 n. 11 (7th Cir. 1988) (giving the legitimate business need "a broad definition in terms of the permissible purposes for which a consumer report may be furnished prevents that statutory provision from being read out of the statute."). This broad definition "allows consumer reports to be used for legitimate business purposes while preventing the use of consumer reports for improper purposes." *Id.*; *see also Minter v. AAA Cook Cnty. Consolidation, Inc.,* No. 02 C 8698, 2004 WL 1630781, *5 (N.D. Ill. July 19. 2004) (section 1681b(a)(3)(F) is broadly defined to permit defendants to obtain plaintiff's credit report to aid in defending against her claim).

BANA conducted the account reviews in order to manage its portfolio risk, and to evaluate Plaintiffs for government-sponsored loan modification programs. *See infra* sections II. A. and B. With respect to the HAMP and MHA programs, BANA was required by the federal government to identify customers who might benefit from loss mitigation alternatives, and indeed Germain actively pursued such alternatives on two separate occasions. And BANA's regulator, the OCC, directed BANA to monitor ARM loans in order to manage its risk. Since both Germain and Rhy avidly sought to avoid foreclosure, these risk management and compliance objectives were appropriate. There is simply no disputed issue of fact that the account review inquiries furthered a legitimate business need and therefore fell within the permissible purposes allowed by the FCRA.

2.      **The FCRA Does Not Preclude Review of a Mortgage Loan Account Where the Mortgage Lien Remains in Place**

The FCRA also permits an account review inquiry to further the "review or collection of an account of the consumer," or to use the information in connection with a valuation, or assessment of, an existing credit obligation.  *See* 15 U.S.C. § 1681b(a)(3)(A), (E).  When conducting an account review inquiry for "review or collection of an account of the consumer" a debt collector permissibly obtains a consumer's credit report if the debt collector has "reason to believe" in the permissible purpose to obtain the credit report.  *See Grant v. RJM Acquisitions Funding, LLC*, No. 11 C 8851, 2013 WL 3071249, *1 (N.D. Ill. June 18, 2013); *see also Robinson v. Greystone Alliance, LLC*, No. BPG-10-3658, 2011 WL 2601573, *3 (D. Md. June 29, 2011) (*citing Korotki v. Attorney Servs. Corp. Inc*., 931 F. Supp. 1269, 1276 (D. Md. 1996)).

The statute places no limitation on mortgage accounts where the personal liability has been discharged in bankruptcy but the lien remains.  *See, e.g., id*. at § 1681(a).  The FCRA does not define "credit relationship" as one requiring personal liability. Because the creditor's lien stays with the real property until foreclosure, the credit relationship continues even following bankruptcy. *See, Dewsnup v. Timm*, 502 U.S. 410, 418 (1992). Indeed, no section of the FCRA distinguishes between pre-bankruptcy and post-bankruptcy accounts, and the credit relationship under the FCRA must be broadly construed in favor of the defendant.  *See, e.g., Grant*, 2013 WL 3071249, *1 (debt collector may review account information if it "has reason to believe" debt is owed); *Levine v. World Fin. Network Nat'l Bank,* 554 F.3d 1314, 1318-19 (11th Cir. 2009) (finding an objectively reasonably reading of the FCRA permits account reviews even on closed accounts).

It is undisputed here that BANA's liens remained in effect against the Germain and Rhy properties.   As such, Plaintiffs' mortgages survived their Chapter 7 bankruptcy

11

discharges and BANA retained a right to payment. *See Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991). Moreover, Plaintiff Rhy sought to make "ongoing payments" in order to keep the house, and fought foreclosure tooth and nail for years; Germain repeatedly contacted BANA to explore loss mitigation options. BANA was entitled to review on these accounts, and its conduct was proper under the FCRA. *See* 15 U.S.C. § 1681b(a)(3)(A).

3.   ***Godby* and *Ocwen* do not Prohibit Account Review Inquiries on Active Mortgage Accounts Post-Bankruptcy**

In their Amended Complaint and Opposition to BANA's Motion to Dismiss, Plaintiffs relied heavily on two cases—*Godby v. Wells Fargo Bank, N.A.,* 599 F. Supp. 2d 934 (S.D. Ohio, 2008) and *Barton v. Ocwen Loan Servicing LLC*, No. 12-162, 2012 WL 4449860 (D. Minn., Sept. 26, 2012)—in support of their theory that the account review inquiries conducted by BANA violated the FCRA solely because Plaintiffs had discharged the personal debts in bankruptcy. Neither case is binding authority or persuasive on this issue, and neither case can write into the FCRA a rule which is not stated in the statute.

*Godby* is factually distinguishable. In *Godby*, the Plaintiff filed a Chapter 7 bankruptcy Statement of Intention that elected to surrender the real property that was mortgaged with the creditor. *Godby*, 599 F. Supp. 2d at 935. She also moved out of the property. *Id.* In light of these facts, the court concluded that "as a practical matter, the parties did not have an existing relationship" because the plaintiff had "surrendered her rights to the property" and, as such, there was no permissible purpose for obtaining a credit report. *Id.* at 942.[5] Still, the *Godby* court *granted summary judgment in favor of the*

---

[5] In addition, BANA maintains that *Godby* was wrongly decided to the extent it relies on the assumption that the mortgage loan is discharged in bankruptcy, eliminating the debt. *Godby*, 599 F. Supp. 2d, at 942. This finding ignores the nature of the relationship, as explained above, that continues to exist between lender and borrower after bankruptcy.

*defendant* the issue of willfulness, relying on the fact there was no reported case on point that could have guided the defendant.  *See id*. at 943.  (As set forth below, this fact disposes of Plaintiffs' willfulness claims here for the same reason.)

Unlike in *Godby*, Plaintiffs here fought to retain their properties and continue their relationship with BANA.  Plaintiff Jon Germain submitted, then withdrew, then submitted again his request that BANA accept a deed in lieu of foreclosure, and contested the foreclosure action itself by asserting the affirmative defense that BANA had failed "to offer […] loss mitigation prior to initiating foreclosure proceedings." PFF ¶ ¶ 19, 20, 22, 25.  In her bankruptcy petition, Plaintiff Rhy stated her intention to remain in the property and continue making monthly payments.  PFF ¶ 31.  Rhy also vigorously contested BANA's standing to foreclose and continued to appeal the foreclosure until March 2014, all the while renting the property to which BANA still held a lien.  PFF ¶ ¶ 40, 41.

Similarly, *Ocwen* is not binding or persuasive here.  There, the court found a question of fact as to the nature of the relationship between the debtor and the servicers on a second mortgage following the discharge of the second mortgage in bankruptcy. The court denied defendants' motion to dismiss and motion for summary judgment, citing the need for more discovery.  2012 WL 4449860, *3.  Here, discovery is nearly complete and it is undisputed that the Plaintiffs' respective relationships with BANA continued after bankruptcy.  Accordingly, *Ocwen* is distinguishable on its facts.  Furthermore, *Ocwen* is an unpublished opinion from a district court that was decided after the account review inquiries here and is not binding on this Court.

BANA conducted account review inquiries to manage its risk, value and review Plaintiffs' mortgage accounts, and evaluate Plaintiffs for loss mitigation alternatives to foreclosure. *See infra* sections II. A. and B. Plaintiffs cannot rely on *Godby* or *Ocwen* to establish that such account review inquiries violated the FCRA.

13

**B.**    **EVEN IF BANA VIOLATED THE FCRA, PLAINTIFFS CANNOT ESTABLISH A WILLFUL VIOLATION BECAUSE BANA DID NOT ACT IN RECKLESS DISREGARD OF THE FCRA**

Even if this Court disagreed that BANA complied with the FCRA, BANA would still be entitled to summary judgment. It is undisputed that Plaintiffs suffered no damages—and indeed, that no third party could access that the reviews had occurred. As result, Plaintiffs seek only statutory damages, which require a showing of willful failure to comply with the FCRA. *See* 15 U.S.C. § 1681n; *Edward C. Anderson,* 345 F. Supp. 2d at 975 (Crabb, J.) (plaintiff may be entitled to statutory damages "if he can show a willful failure to comply with any requirement imposed under the Act with respect to any consumer.").

For Plaintiffs to demonstrate a willful violation of the FCRA, they must prove that BANA knowingly or recklessly violated Plaintiffs' rights; in other words, in order to be liable for a willful violation of the FCRA, the defendant must know of an "unjustifiably high" risk that a violation would occur, or should have known of such a risk because it was obvious. *See Safeco Insurance Co. of America,* 551 U.S. at 69 (2007). In *Safeco*, the U.S. Supreme Court held that a reading of the FCRA is not unreasonable, and therefore doesn't present a high risk of violation, if that interpretation has a foundation in the statutory text and there is no authoritative guidance from the FTC or Court of Appeals to the contrary. *Id*. at 70.

Accordingly, Plaintiffs must prove that BANA's conduct was reckless, meaning that it was not based on any reasonable reading of the FCRA, and that BANA ran "a risk of violating the law substantially greater than the risk associated with a reading that was merely careless" based on precedent from the Court of Appeal or the FTC. *See id.* Because BANA reasonably interpreted the FCRA, and there is no authority to the contrary,

Plaintiffs cannot demonstrate that BANA acted with a reckless disregard of the FCRA necessary to their recovery here.

### 1.    BANA's Actions Were Based on a Reasonable Reading of the FCRA

As detailed above, the text of the FCRA does not limit account review inquiries to debts in which there is a personal liability. *See* 15 U.S.C. § 1681b(a)(3)(A)-(F).  Because BANA maintained an enforceable interest in the property, it had a legitimate business purpose to conduct an account review inquiry. *See Dewsnup*, 502 U.S. at 418 (a creditor's lien remains on the property after bankruptcy); *see also Ippolito*, 864 F. 2d at 451 n. 11 (giving the legitimate business need "a broad definition in terms of the permissible purposes for which a consumer report may be furnished prevents that statutory provision from being read out of the statute."). In short, BANA acted in accordance with a reasonable interpretation of the FCRA.

### 2.    BANA's Account Review Conduct Did Not Contravene Any Authority from the FTC or Courts Of Appeals Interpreting the FCRA

Plaintiffs cannot establish a willful violation of the FCRA without authoritative guidance from a Court of Appeals or the FTC stating as a matter of law that creditors may not conduct account review inquiries on mortgage accounts where the customer has obtained a discharge of the debt but still has possession of the property.  No such guidance exists here and Plaintiffs have failed to identify any such authority.

Contrary to Plaintiffs' assertion, the permissible purpose for "review and collecting" accounts encompasses such situations in which the debt may no longer be enforceable against the debtor individually.  Indeed, the Eleventh Circuit Court of Appeals rejected the argument that the defendant willfully violated the FCRA by purchasing a credit report on a borrower who had paid in full and closed a card account.  *Levine,* 554

F.3d at 1318-19. *Levine* reasoned that it is "objectively reasonable" to interpret § 1681b(a)(3)(A) to allow the sale of credit reports for the purpose of reviewing both open and closed accounts, because the text is "far from 'pellucid,'" and no authoritative FTC guidance or judicial opinions have "established that the Act forbids the sale of reports for consumers whose accounts are closed." *See id.*; *see also Wilting v. Progressive Cnty. Mut. Ins. Co*., 227 F.3d 474, 476 (5th Cir. 2000) (per curiam) ("neither the Act nor the FTC's commentary on the Act suggests that a report may only be permissibly obtained during particular points in the parties' relationship").

There is no authoritative guidance to support Plaintiffs' assertion that the discharge of personal liability terminated all permissible purposes. Thus, under *Safeco*, there can be no basis for finding that BANA committed a willful violation of the FCRA. BANA is therefore entitled to summary judgment against Plaintiffs here.

## C.    THIS COURT HAS CONSISTENTLY GRANTED MOTIONS FOR SUMMARY JUDGMENT UNDER SIMILAR CIRCUMSTANCES

This Court has interpreted willfulness to mean "a knowing and intentional act committed in conscious disregard for the rights of others." *See Penny Lee Anderson,* 345 F. Supp. 2d at 975 (*citing Pinner v. Schmidt,* 805 F.2d 1258, 1263 (5th Cir. 1986)). Further, this Court has held that in order to be willful, "'a defendant's action must be on the same order as willful concealment or misrepresentations.'" *Id*. (*quoting McKeown v. Sears Roebuck & Co.*, 335 F. Supp.2d 917, 940 (W.D. Wis. 2004). Where Plaintiffs have failed to meet that standard, as here, this Court has granted summary judgment in favor of Defendants.[6]

---

[6]    On one occasion, this Court denied defendant's motion for summary judgment on a willful violation of the FCRA due to remaining questions as to the reasonableness of defendant's conduct, but later stated that the decision has been in error. *See McKeown,* 335 F. Supp. 2d at 930-31 and *Penny Lee Anderson,* 345 F. Supp. 2d at 972 ("In *Mckeown*, I held that a reasonable jury might find that the procedures employed by the credit reporting agencies in that case were unreasonable because they did not include any mechanism for

This Court's prior rulings correctly reject Plaintiffs' argument here: namely, that because BANA intended to access the credit reports at issue, its conduct was willful. *Penny Lee Anderson*, 345 F. Supp. 2d at 976.  In *McKeown*, this Court held that statutory damages "are available for willful violations, *not simply willful actions*," and observed that to hold otherwise would cause the absurd result that "every violation of [the FCRA] would result in punitive damages liability."  *See McKeown,* 335 F. Supp. 2d at 940 (emphasis added)*.*  The correct analysis, as this Court has held, grants summary judgment in favor of the defendant where plaintiffs fail to offer any evidence of a willful violation of the statute. *See e.g., Konter v. CSC Services, Inc.,* 606 F. Supp. 2d 960, 971 (W.D. Wis. 2009) ("To hold defendant liable for minor errors such as this would be to turn the Act into a strict liability statute, which was not Congress's intent."); *Penny Lee Anderson,* 345 F. Supp. 2d at 976 (granting summary judgment in the absence of evidence of the "kind of conscious disregard or deliberate and purposeful action necessary to make out a claim of willfulness").

At deposition, Plaintiffs Germain and Rhy both admitted that they lack evidence that BANA willfully failed to comply with the FCRA.  *See* PFF at ¶ ¶ 29, 42.  The account review inquiries, which were visible for more than a year and a half before Plaintiffs brought this action, did not harm Plaintiffs.  *See* PFF at ¶ ¶ 28, 44.  Plaintiffs do not contend that they contacted BANA to dispute the inquiries or that BANA failed to properly address their concerns.  *See* PFF at ¶ ¶ 43. Put simply, there is nothing in the text of the FCRA or the factual record to support the allegation that BANA unreasonably interpreted

---

noting discrepancies in accounts that showed both a notation of "deceased" in one tradeline and activity in others. On reconsideration, I am persuaded that this holding was incorrect.") (internal citations omitted).

This Court denied summary judgment in *Scheel-Baggs v. Bank of America*, 575 F. Supp. 2d 1031 (W.D. Wis. 2008) (Crabb, J.), but that case is easily distinguished on its facts.  There, a credit card company was a party to an arbitration in which its debt collection claim against plaintiff was dismissed because the debt was actually owed by plaintiff's ex-husband.  The Court held that defendant's failure to subsequently report accurate information on this debt raised a triable issue on willfulness.  *Id.* at 1043-44.

the FCRA to constitute a willful violation. Alleging a violation is not sufficient to demonstrate a willful violation. *See Konter,* 606 F. Supp. 2d at 970 ("[a]s an initial matter, the mere reappearance of disputed information on a credit report does not make out a claim for willfulness.") (citations omitted); *Penny Lee Anderson,* 345 F. Supp. 2d at 976 (Crabb, J.) (same).

In *Penny Lee Anderson*, this Court weighed the practical considerations of turning the FCRA into a strict liability statute. *Penny Lee Anderson,* 345 F. Supp. 2d at 972. Such concerns are equally applicable here, where BANA acted based on a reasonable reading of the statute, with no potential to harm Plaintiffs, in accordance with the Treasury and OCC directives, and with the intent to explore loan modification options and perform risk analysis. Even if there had been some potential adverse impact to Plaintiffs from these pulls, which was not the case, it would have been offset by the benefit to borrowers struggling to retain their home and welcoming the prospect of assistance.

The language and structure of the FCRA make clear that Congress never intended the FCRA to be an unnecessary barrier to post-bankruptcy assistance by imposing strict liability on credit furnishers for account review inquiries. Based on a plain reading of the FCRA, BANA's conduct was proper, and there is no evidence BANA intended to violate the statute or that BANA ignored appropriate guidance from the Courts of Appeals or the FTC. Accordingly, this Court should grant BANA's Motion for Summary Judgment.

## V.      CONCLUSION

With no basis for finding that BANA intentionally violated the FCRA, Plaintiffs cannot recover statutory damages under § 1681n and their FCRA claims against BANA fail as a matter of law. BANA therefore respectfully requests that this Court grant the Motion and enter summary judgment in favor of BANA and against Plaintiffs.

Dated July 16, 2014.                              Valerie L. Bailey-Rihn
                                                  State Bar No. 1000728
                                                  Rachel A. Graham
                                                  State Bar No. 1069214

                                                  /s/ Rachel A. Graham
                                                  _____
                                                  QUARLES & BRADY LLP
                                                  33 East Main Street
                                                  Suite 900
                                                  Madison, WI  53703
                                                  608.251.5000
                                                  val.bailey@quarles.com
                                                  rachel.graham@quarles.com

                                                  David S. Reidy
                                                  Marc Lackner
                                                  REED SMITH LLP
                                                  101 Second Street
                                                  Suite 1800
                                                  San Francisco, CA 94105
                                                  415.659.5933
                                                  dreidy@reedsmith.com

                                                  *Attorneys for Defendant, Bank of America, N.A.*